UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                                             :
KELLY MACNEAL,                                               :
                                    Plaintiff,               :
                                                             :        23 Civ. 5890 (LGS)
                    -against-                                :
                                                             :        **OPINION AND ORDER**
CITY OF NEW YORK, et al.,                                    :
                                    Defendants.  :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

        Pro se Plaintiff Kelly MacNeal brings this action against the City of New York (the

"City"); Jacqueline Rios and Sapna Raj, who are employees of the New York City Commission

on Human Rights ("CCHR"); and unidentified employees of the New York City Police

Department ("NYPD") and the New York City Fire Department Bureau of Emergency Medical

Services ("FDNY EMS").  All individuals are sued in their official capacity.  Claims against City

employees in their official capacity are treated as against the City and merge into the claims

against the City.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *accord Quinones v. City

of Binghamton*, 997 F.3d 461, 466 n.2 (2d Cir. 2021).  Consequently, the City is treated as the

sole Defendant.

        Plaintiff's claims arise in connection with (1) CCHR's refusal, allegedly because Plaintiff

is Caucasian, to file a complaint for Plaintiff against her landlord and (2) Plaintiff's being

forcibly removed from her apartment and made to undergo a psychological evaluation in

response to a "hyperbolic" suicide threat.  Defendants move to dismiss the Amended Complaint

for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons

below, the motion is denied as to the claim of racial discrimination arising from CCHR's failure

to bring a complaint on behalf of Plaintiff based on her status as a subsidized tenant. The motion to dismiss is otherwise granted.

## I.    BACKGROUND

The following facts are taken from the Amended Complaint. Its allegations are assumed to be true for the purpose of this motion and are construed in the light most favorable to Plaintiff as the non-moving party. *See Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019).

Plaintiff is a Caucasian female who is physically disabled. Her disability includes traumatic brain injury, which makes her susceptible to migraines triggered by exposure to chemical irritants including cigarette smoke fumes. Plaintiff also suffers from back injuries and uses a walking cane and a walker. Since 2017, she has been living in an affordable housing disability unit in a building with a non-smoking policy.

In early 2018, Plaintiff noticed smoking fumes entering her apartment, which stopped after she threatened legal action against her landlord. The fumes resumed in June 2021. This time, when Plaintiff complained, the landlord refused to enforce the building's non-smoking policy, and the fumes continued. Plaintiff believes that the landlord's refusal to remedy the smoke fumes was in retaliation for Plaintiff's having complained about her inability to use the building's disability doors, which broke down regularly and remained broken for months at a time.

### A.    Plaintiff's Complaint to CCHR

On March 22, 2022, Plaintiff approached CCHR to complain about the fumes entering her apartment, chronically broken disability doors, discrimination by management based on Plaintiff's affordable tenant status and retaliation due to her related complaints with the Department of Buildings and Housing Preservation and Development. On April 12, 2022,

CCHR attorney, Jacqueline Rios, conducted an intake interview with Plaintiff.  Rios explained that CCHR would not file a complaint on behalf of Plaintiff because CCHR had lost a similar case that had involved harassment by a neighbor, *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 71 (2d Cir. 2021).  Rios said that, if they could not win that case on behalf of a Black man who had suffered racist language from his neighbor, then CCHR would not file a similar complaint on behalf of Plaintiff.  Plaintiff proposed alternative theories of discrimination: (1) on the basis of disability to challenge the often-broken accessible entrance doors and the doorman's mocking her need to use them or (2) on the basis of Plaintiff's subsidized tenant status because the landlord had taken seriously complaints of smoke fumes by a market-rate tenant with a pregnant wife.  Rios rejected both theories, because (1) on the door issue, Rios was not interested in Plaintiff's expectation of "concierge" service and (2) on the second issue, Rios told Plaintiff that she could not bring a discrimination claim based on her being an affordable tenant "because that legal status was only meant to protect minorities[] because most affordable tenants are minorities," and "since Plaintiff was not claiming to be a minority," she "was not protected by the law."  Rios said that CCHR would not file a complaint for Plaintiff, but agreed to call Plaintiff's landlord to request voluntary assistance for Plaintiff, review more evidence and have Rios's supervisor, Sapna Raj, then-Deputy Commissioner of CCHR's Law Enforcement Bureau, speak with Plaintiff.

The next day, April 13, 2022, Plaintiff tried repeatedly to reach Rios so that she would not take any action with the landlord until Plaintiff could confer with Raj, Rios's supervisor. When Plaintiff reached Rios, she scolded Plaintiff for expecting her to respond and accused her of expecting "concierge" service, which CCHR does not supply.  On April 14, 2022, Raj returned Plaintiff's call, rudely reiterating Rios's refusal for CCHR to file a complaint for

Plaintiff, disregarding her disability claims and stating that Plaintiff could not seek protection from discrimination as an affordable tenant because she was not a minority.

Plaintiff emailed Rios and Raj, warning that she would report CCHR's failure to act to the Department of Investigation. Raj replied, stating that CCHR would engage in "early intervention" with Plaintiff's landlord. CCHR provided the landlord a list of accommodations that would be acceptable to CCHR, including moving Plaintiff to another apartment. When the landlord presented these options to Plaintiff, she rejected them because they were inappropriate or ineffective.

By email, on April 22, 2022, Plaintiff informed Raj that the fumes were still coming into Plaintiff's apartment and explained why she was rejecting the CCHR accommodations and instead insisting that the landlord locate the source of fumes and enforce the non-smoking policy. Plaintiff explained, among other things, that moving her to another unit would be too traumatic because she had a broken back. An hour later, Rios sent Plaintiff an official rejection letter, informing her that CCHR would not file a complaint on her behalf.

Plaintiff sent several emails afterwards. In an April 23, 2022, email, Plaintiff stated, "[W]hy have you been telling me my status as an affordable tenant isn't protected," and "It is illegal for the landlord to . . . treat subsidized tenants in a discriminatory manner." Plaintiff attached supporting documentation and reiterated that the landlord had gone "to great lengths to find a smoker that was disturbing my non-subsidized neighbor . . . ." On April 28, 2022, Plaintiff stated that she would sue CCHR for racial discrimination if it did not bring a complaint on her behalf that day. CCHR did not respond.

B.      **The Suicide Evaluation**

On May 6, 2022, at 1:17 a.m., Plaintiff emailed her landlord, Rios and Raj at CCHR[1] and a person with a NYsenate.gov email address, with a blind copy to someone at a gmail address. Plaintiff's email emphatically reported her symptoms of low blood oxygen, chest pains, shortness of breath and "exploding" headache as a result of the smoke fumes. She also said, "I am go[i]ng to kill myself if this doesn't stop!" and "I should just end it quickly . . . I can't stand the pain."

Later that day, NYPD officers and FDNY EMS personnel arrived at Plaintiff's door, presumably in response to someone's report of Plaintiff's suicidal intentions. Over Plaintiff's objection and insistence that she was not suicidal, the officers took Plaintiff to the hospital for a psychological evaluation. During this process, NYPD officers "violently handcuffed" Plaintiff, incorrectly "cutting into her wrist bone," strapped her into a chair and dragged her out of her apartment building. After being forced to spend the night at the hospital under observation, she was released.

## II.    STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007));[2] *accord Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must

---

[1] Although the version of the email attached to the Amended Complaint has the names blacked out, the Amended Complaint implies that the two people at CCHR were Rios and Raj.

[2] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

"nudge[ ] . . . claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *accord Bensch v. Est. of Umar*, 2 F.4th 70, 80 (2d Cir. 2021). Under Rule 12(b)(6), a court "accept[s] as true all well-pleaded factual allegations, draw[s] all reasonable inferences in the plaintiff's favor, and assess the complaint to determine whether those allegations plausibly establish entitlement to relief." *Tripathy v. McKoy*, 103 F.4th 106, 113 (2d Cir. 2024). A court does not consider "conclusory allegations or legal conclusions couched as factual allegations." *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021).

The Court construes *pro se* submissions liberally and reads them "to raise the strongest arguments they suggest." *Publicola v. Lomenzo*, 54 F.4th 108, 111 (2d Cir. 2022). Pro se litigants are accorded "special solicitude to protect them from inadvertent forfeiture of important rights because of their lack of legal training." *Kotler v. Jubert*, 986 F.3d 147, 156 (2d Cir. 2021). Nonetheless, "pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law." *United States v. Starling*, 76 F.4th 92, 99 (2d Cir. 2023).

## III.    DISCUSSION

The claims in the Amended Complaint arise from two constellations of fact. The first is CCHR's refusal, allegedly because Plaintiff is Caucasian, to file a complaint for Plaintiff against her landlord. The relevant claims assert racial discrimination under 42 U.S.C. §§ 1981, 1983, 1985(3), 1986 and the New York City Human Rights Law ("NYCHRL"). The second factual constellation relates to Plaintiff's forced psychological evaluation after she sent a "hyperbolic" suicide threat. The related claims are for false arrest, false imprisonment and excessive force under 42 U.S.C. §§ 1983 and 1988, the Americans with Disabilities Act ("ADA"), intentional

and negligent infliction of emotional distress, and retaliation.  The Amended Complaint also alleges failure to train and supervise.  Plaintiff seeks compensatory and punitive damages.

For the reasons below, Defendant's motion to dismiss is denied as to a portion of Plaintiff's racial discrimination claims and otherwise is granted.

## A.    Claims Related to CCHR's Refusal to File a Complaint for Plaintiff

The Amended Complaint states a sufficient federal § 1983 claim and an NYCHRL claim for racial discrimination against the City for CCHR's alleged refusal to bring a complaint about the smoke fumes on Plaintiff's behalf on account of her subsidized tenant status because Plaintiff is not a "minority."  The Amended Complaint does not state a § 1983 claim as to the other allegations of discrimination based on CCHR's refusal to bring a *disability* discrimination claim on Plaintiff's behalf against her landlord based on (1) the smoke fumes and (2) the chronic disrepair of disability entrance doors to her apartment building and the doorman's mocking her for needing to use it.  Each potential claim that Plaintiff sought to have CCHR bring on her behalf is addressed in turn.

### 1.    42 U.S.C. § 1983 Claim for Racial Discrimination

#### i.    Applicable Law -- *Monell* Claims

Under the Supreme Court's ruling in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a municipality may be held liable under 42 U.S.C. § 1983 only if the plaintiff can show "(1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right."  *Friend v. Gasparino*, 61 F.4th 77, 93 (2d Cir. 2023).

To survive a motion to dismiss, a complaint may adequately allege the first element of a municipal policy or custom by pleading (1) an express rule or policy, (2) decisions or acts of a municipality's lawmakers or policymaking officials, (3) "practices so persistent and widespread

as to practically have the force of law [and] may be pronounced or tacit and reflected in either action or inaction" or (4) the municipality's failure to train its employees that amounts to deliberate indifference. *See Lucente v. County of Suffolk*, 980 F.3d 284, 297-98 (2d Cir. 2020); *Hernandez v. United States*, 939 F.3d 191, 206 (2d Cir. 2019). A complaint may plead a "persistent and widespread" practice by alleging "sufficient instances of tolerant awareness by supervisors of [unconstitutional] conduct to support an inference that they had a policy, custom or usage of acquiescence." *Lucente*, 980 F.3d at 297-98. "A municipality's policy of inaction in light of notice that its program will cause constitutional violations is the functional equivalent of a decision by the municipality itself to violate the Constitution." *Id.* at 297.

To plead causation, the second element of a *Monell* claim, a complaint must allege that the "execution of [the City's] policy or custom," not just the City's employees or agents, "inflicts the injury" of constitutional deprivation. *Monell*, 436 U.S. at 694; *accord Legg v. Ulster County*, 979 F.3d 101, 116 (2d Cir. 2020). In other words, "a plaintiff must demonstrate that through its *deliberate* conduct, the municipality was the moving force behind the injury alleged." *Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 98 (2d Cir. 2020) (emphasis in original); *accord Persaud v. City of New York*, No. 22 Civ. 2919, 2024 WL 2159852, at *9 (S.D.N.Y. May 14, 2024).

### ii.    Applicable Law - Equal Protection

The Amended Complaint alleges that Defendants deprived Plaintiff of her constitutional right to be free from racial discrimination. The Equal Protection Clause prohibits states from "deny[ing] to any person within [their] jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. "The Clause's central purpose is to prevent the States from purposefully discriminating between individuals on the basis of race." *Chinese Am. Citizens All.*

*of Greater N.Y. v. Adams*, 116 F.4th 161, 170 (2d Cir. 2024) (quoting *Shaw v. Reno*, 590 U.S. 630, 642 (1993)).  The Second Circuit has

> generally recognized three types of discriminatory laws: (1) a facially discriminatory law or policy that expressly classifies individuals on the basis of race; (2) a facially neutral law that is enforced in a discriminatory fashion; and (3) a facially neutral law that was adopted with discriminatory intent and resulted in a discriminatory effect.

*Id.*  Applying this framework, the Complaint alleges that the CCHR, the agency tasked with enforcing the NYCHRL, is enforcing the facially neutral NYCHRL in a discriminatory fashion. *See* N.Y.C. Admin. Code §§ 8-109-8-134 (tasking CCHR with enforcing NYCHRL and prescribing the administrative process).

Absent an express racial classification, a plaintiff must establish that "an invidious discriminatory purpose" has been "a motivating factor" behind the facially neutral law.  *Adams*, 116 F.4th at 172.  The defendant's differential treatment must be "*because of*, not merely in spite of, its adverse effects upon [her group]."  *See Congregation Rabbinical Coll. of Tartikov, Inc. v. Village of Pomona*, 945 F.3d 83, 111 (2d Cir. 2019) (emphasis added).  At the motion to dismiss stage, allegations that the defendant treated the plaintiff less favorably because of the plaintiff's race are sufficient to plead a violation of a constitutional right.  *See Pyke v. Cuomo*, 258 F.3d 107, 109 (2d Cir. 2001) (reversing dismissal of Native American plaintiffs' equal protection claim because they alleged that "the defendants discriminatorily refused to provide police protection because the plaintiffs are Native American"); *accord Murphy v. City of New York*, 719 F. Supp. 3d 357, 372 (S.D.N.Y. 2024) (allowing a plaintiff's *Pyke*-type claim to proceed).

### iii.       CCHR's Failure to Bring a Complaint for Subsidized Tenant Status

The Amended Complaint sufficiently pleads a § 1983 racial discrimination claim for CCHR's refusal to bring a complaint against Plaintiff's landlord, who allegedly refused to

remediate smoke fumes because Plaintiff was a subsidized tenant, because CCHR's refusal allegedly was because Plaintiff does not belong to a racial or ethnic minority.

The Amended Complaint alleges that Rios discriminated against Plaintiff on the basis of race. Plaintiff informed Rios that Plaintiff's landlord took seriously the complaint of a market-rate tenant with a pregnant wife about fumes but did not do so for Plaintiff, who is a subsidized tenant. Rios rejected Plaintiff's assertion of disparate treatment, despite the NYCHRL's prohibition of discrimination on the basis of lawful source of income, which includes "any form of federal, state, or local public assistance or housing assistance." N.Y.C. Admin. Code § 8-107(5)(p) (prohibiting housing discrimination on the basis of lawful source of income); *id.* § 8-102 (defining "lawful source of income"). Rios stated that "[Plaintiff] could not claim discrimination based on being an affordable tenant 'because that legal status was only meant to protect minorities.'" Plaintiff raised an earlier, successful complaint brought by CCHR on behalf of other subsidized tenants subject to discriminatory treatment. Rios responded that the earlier complaint "was only brought by CCHR because most affordable tenants are minorities" and refused to bring a complaint for Plaintiff because Plaintiff "was not claiming to be a minority . . . and, because of this, CCHR would not file any complaints for her on that basis." The day after CCHR's formal rejection, Plaintiff provided documentation showing that subsidized tenants are a protected class and reiterated that the landlord had gone "to great lengths to find a smoker that was disturbing my non-subsidized neighbor," to which CCHR did not respond. Construed in favor of Plaintiff, the Amended Complaint states a *Pyke* claim; similar to the police officers in *Pyke* who refused to protect plaintiffs because plaintiffs were Native American, Rios declined to file a complaint for Plaintiff because she is Caucasian, both of which are impermissible under the Equal Protection Clause. *See Pyke*, 258 F.3d at 109 (2d Cir. 2001).

The Amended Complaint adequately alleges a policy or custom to trigger *Monell* liability. At the intake interview, Rios stated that the earlier complaint on behalf of subsidized tenants "was only brought by CCHR because most affordable tenants are minorities," and because "Plaintiff was not claiming to be a minority . . . CCHR would not file any complaints for her on that basis." When Raj, Rios's supervisor and then-Deputy Commissioner, returned Plaintiff's call, Raj "reiterated . . . that Plaintiff could not seek affordable tenant discrimination protection due to her not being a minority." Rios's and Raj's statements may give rise to an inference that CCHR had a policy to treat subsidized-tenant claimants differently if they are not racial or ethnic minorities. *Cf. Torcivia v. Suffolk County*, 17 F.4th 342, 355 (2d Cir. 2021) (affirming district court's determination at summary judgment that an officer's testimony about the existence of a policy "would support the conclusion of a reasonable juror that" such a policy or practice existed); *Jones v. City of New York*, 603 F. App'x 13, 15 (2d Cir. 2015) (summary order) (reversing a district court's summary judgment for defendants because an officer's testimony that "[t]hat is what we do," despite lack of an official policy, could support a finding of custom or policy under *Monell*). The Rios and Raj statements also support an inference that CCHR refused to file a complaint on Plaintiff's behalf pursuant to this policy, thus satisfying *Monell*'s causation requirement.

### iv.    CCHR's Refusal to Bring Disability Discrimination Claim About Fumes

The Amended Complaint insufficiently pleads a § 1983 claim for CCHR's refusal to bring a disability-discrimination claim against Plaintiff's landlord for its failure to stop the neighbor's smoke fumes because the Amended Complaint does not plead that CCHR deprived Plaintiff of a constitutional right, an essential element of § 1983 claim. The Amended Complaint does not allege facts to support the inference that CCHR's refusal to bring a disability claim was

due to Plaintiff's race.  Rather, the stated reason was that CCHR had lost a similar case, *Francis*,
992 F.3d 67, and believed that Plaintiff's case would be unsuccessful.  In *Francis*, the Second
Circuit affirmed the dismissal of a discrimination claim brought by CCHR against a landlord for
failure to intervene regarding a neighbor's harassment of a Black tenant, in part because the
landlord exercised insufficient control over the harassing neighbor.  *Id.* at 73-74.  Rios stated that
"[i]f we could not win that case for that poor [B]lack man, then we won't file a case against your
landlord."  This statement explains why Rios refused to file a discrimination claim for Plaintiff
against her landlord for failure to intervene with a neighbor's smoking.  Whether correct or not,
refusing to file because of the unfavorable outcome in *Francis* is not an improper race-based
reason.

>    v.    **CCHR's Refusal to Bring Disability Discrimination Claim About Doors**

The Amended Complaint insufficiently pleads a § 1983 claim for CCHR's refusal to
bring a disability-discrimination claim against Plaintiff's landlord regarding the chronic disrepair
of disability doors and the doorman's mocking Plaintiff for her need to use them.  The claim fails
because the Amended Complaint does not allege that CCHR deprived Plaintiff of a constitutional
right -- i.e., does not allege facts to support the inference that CCHR's refusal to bring a
disability claim was due to Plaintiff's race.  Rather, the stated reason was that CCHR does not
"supply" "'concierge' service."  Although Plaintiff interpreted Rios's reference to "concierge
service" to refer to "white privilege," the term "concierge service" is not an inherently racial
term.  The term implies a higher-than-ordinary level of personalized service, and was perhaps a
reference to Plaintiff's complaint about the doorman.  While Plaintiff's landlord may have
impermissibly discriminated against her on the basis of disability by refusing to repair the
disability doors, CCHR's refusal to bring that claim is not a constitutional violation because

insufficient facts are alleged to show that CCHR's refusal was because of Plaintiff's race or any other legally protected status.

### 2. NYCHRL Claims for Racial Discrimination

Similar to the § 1983 claims, the Amended Complaint states an NYCHRL claim against the City, Raj and Rios for CCHR's alleged failure to bring a complaint on Plaintiff's behalf for her subsidized tenant status but not for the other refusals.

The Amended Complaint sufficiently pleads an NYCHRL claim as to CCHR's failure to bring a complaint for Plaintiff's subsidized tenant status because CCHR, a place of public accommodation for NYCHRL enforcement purposes, allegedly denied Plaintiff equal treatment because of her race. *See* N.Y.C. Admin. Code § 8-107(4)(a)(1) (prohibiting racial discrimination by a place of public accommodation); *cf. Boureima v. N.Y.C. Hum. Res. Admin.*, 10 N.Y.S.3d 199, 200 (1st Dep't 2015) (finding the New York City Human Resources Administration to be a place of public accommodation); *Goldenberg v. Metro. Transp. Auth.*, 217 N.Y.S.3d 429, 435 (N.Y. Sup. Ct. 2024) (finding subway system owned by the City to be a place of public accommodation).

The Amended Complaint does not state a racial discrimination claim for the other refusals "even under [the NYCHRL's] more lenient standard." *See Anandaraja v. Icahn Sch. of Med. at Mount Sinai*, 212 N.Y.S.3d 60, 63 (1st Dep't 2024). To assert an NYCHRL claim, a plaintiff still must "plead specific facts . . . connect[ing] [d]efendants' conduct to" the plaintiff's protected status, or "demonstrating how anyone similarly situated to [the plaintiff] was treated better or differently on account of" the protected status. *Id.* As discussed above, the allegations in the Amended Complaint do not support an inference that CCHR refused to bring Plaintiff's disability discrimination claims regarding the fumes or the doors because of her race -- i.e., that

CCHR would bring such claims only on behalf of disabled tenants who belong to racial or ethnic minorities.

### 3.    42 U.S.C. §§ 1981, 1985(3) and 1986 Claims

The Amended Complaint does not state a § 1981 claim because such a claim can be brought against only private actors and not a state actor like Defendant.  *See Duplan v. City of New York*, 888 F.3d 612, 616 (2d Cir. 2018) ("42 U.S.C. § 1983 provides the sole cause of action available against state actors alleged to have violated § 1981."); *accord Elgalad v. N.Y.C. Dep't of Educ.*, No. 17 Civ. 4849, 2024 WL 621617, at *7 (S.D.N.Y. Feb. 14, 2024).

The Amended Complaint does not adequately plead a conspiracy claim under 42 U.S.C. § 1985(3).

> A conspiracy claim under Section 1985(3) requires a plaintiff to allege: 1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015); *accord Gilliam v. Greenberg Traurig LLP*, No. 23 Civ. 6144, 2024 WL 4043348, at *3 (S.D.N.Y. Sept. 4, 2024).  "In order to maintain an action under Section 1985, a plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end."  *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003); *accord Gilliam*, 2024 WL 4043348, at *3.  The conclusory allegations in the Amended Complaint that multiple agents of the City conspired to deny Plaintiff her right to equal protection is insufficient to support the inference of an agreement to violate Plaintiff's constitutional rights.  The § 1985 claims are dismissed.

The Amended Complaint does not state a § 1986 claim because "a § 1986 claim must be predicated on a valid § 1985 claim." *Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d Cir. 2000); *accord Cano v. City of New York*, No. 23 Civ. 3733, 2024 WL 3520471, at *2 (S.D.N.Y. July 24, 2024). The § 1986 claims are thus dismissed alongside the § 1985 claims.

### B.    Claims Related to the Suicide Evaluation

### 1.    False Arrest and False Imprisonment

The false arrest and false imprisonment claims, under both § 1983 and New York common law, are dismissed because probable cause existed to subject Plaintiff to a psychological evaluation. Probable cause is a complete defense to a false arrest and imprisonment claim. *Washington v. Napolitano*, 29 F.4th 93, 104 (2d Cir. 2022); *De Lourdes Torres v. Jones*, 47 N.E.3d 747, 759 (N.Y. 2016) (explaining that probable cause makes the act of confinement privileged, defeating a common law false arrest and imprisonment claim). "[T]o make a mental health arrest, police officers must consider whether probable cause exists to believe the individual is a danger to herself or others, that is, whether there is a substantial risk of serious physical harm to herself or others." *Guan v. City of New York*, 37 F.4th 797, 807 (2d Cir. 2022) (both federal and New York law); *see* N.Y. Mental Hygiene L. § 9.39 (providing for "immediate observation, care and treatment" in a hospital if "reasonable cause" exists to believe that the individual's mental illness "is likely to result in serious harm to himself or others," including "substantial risk of physical harm to himself as manifested by threats of or attempts at suicide or seriously bodily harm"). "[O]nce a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Washington*, 29 F.4th at 105; *People v. Guthrie*, 30 N.E.3d 880, 883 (N.Y. 2015) ("Probable cause" requires "merely information sufficient to support a

*reasonable belief . . . .*") (emphasis in original).  Plaintiff's email threatening suicide provided CCHR and the officers a reasonable basis for believing that Plaintiff was a danger to herself.

The § 1983 false arrest and false imprisonment claim also fails because the Amended Complaint does not allege facts showing a municipal policy or custom that was "the moving force of the constitutional violation."  *See Monell*, 436 U.S. at 694.  The City is liable under *Monell* only when the allegedly constitutional conduct "implements or executes" a municipal policy, not when the City merely "employs a tortfeasor" who acted unlawfully beyond what the policy prescribes.  *Id.* at 690-91.  A policy that mandates suicide evaluation of a person reported as a suicide threat, standing alone, is insufficient; the policy would have to require the officers to falsely arrest or imprison such person.  *See id.* at 691.  The Amended Complaint does not allege or identify such a policy.

### 2.     Excessive Force

The Amended Complaint seeks to assert an excessive force claim under § 1983.  The claim is dismissed because the Amended Complaint does not plead a municipal policy of employing excessive force against people reported for suicidal risks.  *See id.* at 690-91.  To the extent the claim is construed to assert excessive force under state law, the claim is dismissed because it does not allege a sufficiently grave or permanent injury.  "Tight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort.  The most common injuries found to satisfy the injury requirement in handcuff cases are scarring and nerve damage." *Burris v. Nassau Cnty. Dist. Att'y*, No. 14 Civ. 5540, 2022 WL 889027, at *4 (E.D.N.Y. Mar. 25, 2022).  New York courts have dismissed excessive force claims "based on the act of handcuffing plaintiff during a lawful arrest and [] unsupported by any evidence of injury." *See Christian v. City of New York*, 179 N.Y.S.3d 64, 65 (1st Dep't 2022); *cf. Snow v. Schreier*, 147

N.Y.S.3d 274, 276 (1st Dep't 2021) (allowing excessive force, battery and assault claims to

proceed when the officers' attempt to handcuff plaintiff broke her arm).

### 3.    ADA Violation

The Amended Complaint does not state a claim that the City or employees of the NYPD

and FDNY EMS violated the ADA.  The Amended Complaint alleges that these individuals

failed to make a proper assessment of Plaintiff and take due care before subjecting her to the

involuntary suicide evaluation.  But the Amended Complaint does not allege that Plaintiff's

"disability made it difficult in any way for her to access benefits . . . that were available to

[similarly situated persons who were not disabled]."  *See Tardif v. City of New York*, 991 F.3d

394, 405 (2d Cir. 2021).  The ADA claim is dismissed because no ADA violation exists when "an

individual challenges the substance of the services provided -- rather than illegal discrimination."

*Id.*

### 4.    Defamation

Both the federal and New York common law defamation claims are dismissed because

CCHR's alleged report to NYPD regarding Plaintiff's suicide threat is not defamatory.  To

sustain a defamation claim under New York law, a complaint must plead the following elements:

> (a) a false statement that tends to expose a person to public contempt, hatred,
> ridicule, aversion, or disgrace, (b) published without privilege or authorization to
> a third party, (c) amounting to fault as judged by, at a minimum, a negligence
> standard, and (d) either causing special harm or constituting defamation per se.

*Long Island Thoracic Surgery, P.C. v. Bldg. Serv. 32BJ Health Fund*, 188 N.Y.S.3d 570, 572 (2d

Dep't 2023); *accord Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019) (stating New York

law elements for libel, which is defamation in written form).  A defamation claim under § 1983

requires the additional element of "a material state-imposed burden or state-imposed alteration of

the plaintiff's status or rights."  *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004); *accord*

*Aniades v. N.Y. State Div. of Parole*, No. 21 Civ. 5975, 2023 WL 4421877, at *9 (S.D.N.Y. July 10, 2023).

The suicide report allegedly made by CCHR employees was neither false nor derogatory. The Amended Complaint does not identify a specific allegedly false statement but alleges that "CCHR used Plaintiff's email as the basis to make a knowingly false and malicious report to authorities identifying Plaintiff as a 'suicide threat.'" Plaintiff's email to CCHR employees and others states, "I am go[i]ng to kill myself if this doesn't stop!" and "I should just end it quickly . . . I can't stand the pain." Accepting the Amended Complaint's assertion that Plaintiff was not suicidal, a statement that she had threatened suicide or forwarding her email with a statement that the email had been received is not an objectively false statement. *See Altman v. New Rochelle Pub. Sch. Dist.*, No. 13 Civ. 3253, 2017 WL 66326, at *12 (S.D.N.Y. Jan. 6, 2017) (discussing that, in the related state defamation action, the jury found that defendant's report of plaintiff's suicide threat was true). Nor is the report derogatory; "[O]ur society has advanced beyond the point when calling for help when having suicidal feelings is considered degrading." *Matthews v. Malkus*, 377 F. Supp. 2d 350, 358 (S.D.N.Y. 2005) (dismissing as "not inherently defamatory" plaintiff's defamation claim regarding defendant's report to officials of plaintiff's statement that she wished she were dead); *accord Houston v. N.Y. Post Co.*, No. 93 Civ. 4408, 1997 WL 10034, at *3 (S.D.N.Y. Jan. 10, 1997) (finding an article's implied assertion that plaintiff attempted suicide is not defamatory).

### 5.    Intentional and Negligent Infliction of Emotional Distress

The Amended Complaint does not state claims for intentional or negligent infliction of emotional distress. As a threshold matter, these claims are state tort actions not actionable under § 1983. *See Morris-Hayes v. Bd. of Educ. of Chester Union Free Sch. Dist.*, 423 F.3d 153, 158

(2d Cir. 2005) (Section 1983 "authorizes actions to enforce the rights of individuals under *federal* statutes as well as under the Constitution.") (emphasis added); *accord Caraballo v. Dep't of Corr. N.Y.*, No. 22 Civ. 971, 2022 WL 16555313, at *3 (S.D.N.Y. Oct. 31, 2022).

The intentional infliction of emotional distress claim under New York common law is dismissed because the Amended Complaint does not allege the requisite "extreme and outrageous conduct." *Chanko v. Am. Broad. Cos.*, 49 N.E.3d 1171, 1178 (N.Y. 2016). Under New York law, a cause of action alleging intentional infliction of emotional distress requires: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Id.* "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* The Amended Complaint alleges that CCHR needlessly reported Plaintiff's suicide threat and that employees of the NYPD and FDNY EMS removed her from home and subjected her to an unnecessary psychological evaluation. These allegations do not meet the high bar of "extreme and outrageous conduct" required for intentional infliction of emotional distress. *See id.*

Nor does the Amended Complaint state a claim for negligent infliction of emotional distress because the Amended Complaint alleges only intentional, and not negligent, conduct. *See Fernandez v. Fernandez*, 189 N.Y.S.3d 538, 541 (2d Dep't 2023) ("[A]llegations of intentional conduct . . . cannot form the basis of a negligence claim."); *Mees v. Stibbe N.Y. B.V.*, 146 N.Y.S.3d 481, 481-82 (1st Dep't 2021) (finding "palpably insufficient" negligence claims "supported solely by allegations of intentional conduct"). The negligent infliction of emotional distress claim is dismissed for the additional reason that the Amended Complaint does not

sufficiently plead that Defendants breached any applicable duty owed to Plaintiff in connection with the lawful mental health arrest. *Fox v. Starbucks Corp.*, No. 21-2531, 2023 WL 407493, at *2 (2d Cir. Jan. 26, 2023) (summary order) (stating the elements of a negligent infliction of emotional distress under New York law, including "breach of a duty owed to the plaintiff").

### 6.    Retaliation

The Amended Complaint does not state a retaliation claim either under the First Amendment or the NYCHRL. The Amended Complaint alleges that CCHR employees reported Plaintiff's suicide threat to retaliate against her "stated intent to bring suit against CCHR." To state a First Amendment retaliation claim, a plaintiff "must plausibly allege that (1) his or her speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him or her; and (3) there was a causal connection between this adverse action and the protected speech." *Quinones*, 997 F.3d at 466. The NYCHRL also prohibits retaliation by any person -- including "governmental bodies or agencies," N.Y.C. Admin. Code § 8-102 -- against someone who has opposed unlawful discrimination or commenced a civil action. *Id.* § 8-107(7). A plaintiff asserting a NYCHRL retaliation claim must "allege facts sufficient to establish a causal connection between the protected activities and the conduct alleged to be retaliatory." *Akinde v. N.Y.C. Health & Hosps. Corp.*, 92 N.Y.S.3d 883, 884 (1st Dep't 2019). After Rios sent Plaintiff the official rejection letter on April 22, 2022, the Amended Complaint does not allege any further communications from CCHR. On April 28, 2022, Plaintiff informed CCHR of her intent to sue and received no response. On May 6, 2022, at 1:17 A.M., Plaintiff emailed CCHR employees and others stating that that "I am going to kill myself if this doesn't stop." NYPD officers and FDNY EMS personnel later arrived at Plaintiff's door and subjected Plaintiff to an involuntary evaluation. The record does not support the inference that the

CCHR's police report (assuming it was CCHR that reported the threat) was motivated by Plaintiff's stated intent to sue expressed a week earlier, rather than Plaintiff's immediately preceding statement much closer in time. In effect, any causal link between Plaintiff's stated intent to sue and the CCHR report to the police was severed by Plaintiff's intervening suicide threat, particularly where CCHR's report of the threat was not untrue. *See Agosto*, 982 F.3d at 104 (holding that the causal link between plaintiff's protected activity and the allegedly retaliatory letter is severed by an intervening act of a third-party that triggered the letter); *see also Stephens v. N.Y. State Div. of Hum. Rts.*, 133 N.Y.S.3d 21, 23 (1st Dep't 2020) (finding the challenged conduct not retaliatory because it was explained by a proper reason that was not "false or pretextual"). The retaliation claim is dismissed.

### 7. 42 U.S.C. § 1988 Claim

The Amended Complaint does not state a claim under 42 U.S.C. § 1988 because § 1988 does not independently provide a federal cause of action. *Moor v. Alameda County*, 411 U.S. 693, 704 n.17 (1973); *accord Cano*, 2024 WL 3520471, at *2.

### C. Failure to Train and Negligent Supervision

The Amended Complaint does not state a § 1983 claim for failure to train with regard to either CCHR's refusal or the suicide evaluation. Absent an express policy, a plaintiff may allege an official policy actionable under *Monell* by pleading a municipality's failure to train its employees that amounts to "deliberate indifference to the rights of persons with whom the untrained employees come into contact." *Hernandez v. United States*, 939 F.3d 191, 206 (2d Cir. 2019). "Deliberate indifference is a stringent standard of fault." *Id.* at 207. Plaintiff must plead that the municipality "has actual or constructive notice, generally from a pattern of similar constitutional violations by untrained employees, that its training program is deficient," so that

the municipality's failure to train or supervise employees "was taken with deliberate indifference as to its known or obvious consequences." *Id.* The Amended Complaint does not allege a pattern of similar constitutional violations beyond Plaintiff's single encounter with CCHR, NYPD and FDNY EMS.

The New York common law negligent supervision and retention claim is also dismissed because the Amended Complaint does not allege facts showing that CCHR or the City had the requisite actual or constructive knowledge. Under New York law, to allege a "negligence claim relat[ing] to an employer's retention and supervision of an employee, the complaint must include allegations that [] the employer had actual or constructive knowledge of the employee's propensity for the sort of behavior which caused the injured party's harm." *Moore Charitable Found. v. PJT Partners, Inc.*, 217 N.E.3d 8, 14 (N.Y. 2023). The Amended Complaint does not plead actual knowledge of the City or CCHR. While New York courts have occasionally imputed knowledge of a corporation's principal or president to the corporation, the knowledge of Raj, who at the time was Deputy Commissioner of the Law Enforcement Bureau, is insufficient because she did not possess the sufficient authority or control over CCHR. *Cf. Weinberg v. Mendelow*, 979 N.Y.S.2d 29, 32 (1st Dep't 2014) (president of firm); *Yaniv v. Taub*, 683 N.Y.S.2d 35, 38 (1st Dep't 1998) (principal of corporation); *see generally* N.Y.C. Charter §§ 903, 905(g) (reserving the CCHR's rulemaking authority to commissioners appointed by mayor). Nor does the Amended Complaint plead constructive knowledge because it does not identify any prior, similar "facts or events evidencing [the employees'] propensity" to unlawfully discriminate amongst claimants. *See Moore Charitable Found.*, 217 N.E.3d at 15. Plaintiff argued that CCHR should know its agency attorneys would encounter Caucasian victims of non-racial discrimination because approximately 38% of the population in New York City is Caucasian as

of July 1, 2022.  This statistic does not address the key inquiry whether "a reasonably prudent employer . . . would have been aware of the employee's propensity to engage in the injury-causing conduct," in this case, to discriminate against Caucasian claimants, not just to encounter them.  *Id.* at 15.  The negligent supervision claim is dismissed.

## IV.    CONCLUSION

For the reasons above, Defendants' motion to dismiss is **DENIED** as to Plaintiff's racial discrimination claims under 42 U.S.C. § 1983 and the NYCHRL regarding CCHR's failure to file a complaint for Plaintiff alleging that her landlord discriminated against her on account of her subsidized tenant status.  Defendants' motion to dismiss is otherwise **GRANTED**.

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 32.

Dated: February 26, 2025
       New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE