23 Civ. 5890 (LGS) (JW)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KELLY MACNEAL,

Plaintiff,

-against-

NEW YORK CITY COMMISSION ON HUMAN RIGHTS, SAPNA RAJ, JACQUELINE RIOS, THE CITY OF NEW YORK, SERGEANT BRYAN HANSON, OFFICER NICKOLAS ALAVANJA, OFFICER DYLAN DARNAUD, OFFICER BRENDAN MCGOVERN, OFFICER NICK MICKOVIC, and OFFICER CONNOR COGHLAN,

Defendants.

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT**

*STEVEN BANKS*

*Corporation Counsel of the City of New York*
*Attorney for Defendants City, Hanson, Alavanja, Darnaud, McGovern, and Coghlan*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: John McLaughlin*
*Tel: (212) 356-2670*
*Matter No.: 2023-099554*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................. III

PRELIMINARY STATEMENT ......................................................................... 1

ARGUMENT

    POINT I

        THE REASSERTED CLAIMS ARE FUTILE BECAUSE THE BWC FOOTAGE DOES NOT CURE THE LEGAL DEFICIENCIES IDENTIFIED IN THIS COURT'S PRIOR ORDERS.................................................................................... 2

        A. False Imprisonment .................................................... 2

        B. Excessive Force ......................................................... 3

        C. Defamation ............................................................... 4

        D. Intentional and Negligent Infliction of Emotional Distress ...................................................... 5

        E. Retaliation ................................................................ 5

        F. 42 U.S.C. §§ 1981, 1985(3), 1986, and 1988 ...................... 6

        G. Failure to Train and Negligent Supervision......................... 6

    POINT II

        PLAINTIFF'S NEW FOURTH AMENDMENT CLAIM IS FUTILE ...................................................... 7

        A. Officer Coghlan's Conduct Was Reasonable Under the Totality of the Circumstances ........................... 7

            (1) Plaintiff's Privacy Interest Was Reduced by Her Custodial Status and Imminent Hospital Admission.............................. 8

            (2) The Government's Interest in Identification Was Significant .............................. 9

            (3) The Intrusion Was De Minimis .............................. 10

        B. The Special Needs Doctrine Independently Justifies the Search ...................................................... 10

        C. No Monell Policy Is Alleged .......................................... 11

        D. The Absence of On-Point Authority Confirms This Claim's Futility...................................................... 12

**Cases**                                                        **Pages**

POINT III

    ADDING FDNY EMTS AS DEFENDANTS IS
FUTILE AND IMPROPER ...................................................................... 14

POINT IV

    PLAINTIFF'S MOTION IS AN IMPROPER
SERIAL MOTION FOR RECONSIDERATION ................................... 17

    A. Plaintiff Still Fails to Identify a Defamatory
Statement, as Required ...................................................................... 17

POINT V

    OFFICERS' BODY WORN CAMERA FOOTAGE
IS PROPERLY BEFORE THE COURT ................................................. 17

    A. The Footage Is Integral to the Proposed SAC ................................. 18

    B. Plaintiff Cannot Selectively Invoke the Footage ............................. 19

    C. The Court Has Discretion to Consider the
Complete Evidentiary Record ........................................................... 20

CONCLUSION ....................................................................................................... 21

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Pages**

*Agosto v. New York City Dep't of Educ.,*
    982 F.3d 86 (2d Cir. 2020)..................................................................6

*Aiken v. Nixon,*
    236 F. Supp. 2d 211 (N.D.N.Y. 2002)..........................................8, 11, 12

*Anderson v. Creighton,*
    483 U.S. 635 (1987)........................................................................13

*Atkins v. Latanzio,*
    918 F. Supp. 668 (W.D.N.Y. 1995)....................................................13

*Barkai v. Mendez,*
    No. 21 Civ. 4050, 2024 WL 811561
    (S.D.N.Y. Feb. 21, 2024)..................................................................3

*Matter of Bernard G.,*
    247 A.D.2d 91, 679 N.Y.S.2d 104
    (1st Dep't 1998).............................................................................9

*Brooks v. Hogan,*
    No. 9:11-CV-0523, 2013 WL 1294274
    (N.D.N.Y. Jan. 31, 2013)..................................................................8

*Burris v. Nassau County Dist. Att'y,*
    No. 14 Civ. 5540, 2022 WL 889027
    (E.D.N.Y. Mar. 25, 2022).................................................................4

*Chambers v. Time Warner, Inc.,*
    282 F.3d 147 (2d Cir. 2002)...................................................12, 17, 18

*Chanko v. Am. Broad. Cos.,*
    49 N.E.3d 1171 (N.Y. 2016)..............................................................5

*Chapman v. New York State Div. for Youth,* No.
    9:07-CV-1278, 2010 WL 11565152
    (N.D.N.Y. June 10, 2010)................................................................20

*Christian v. City of New York,*
    179 N.Y.S.3d 64 (1st Dep't 2022) .....................................................4

*Connick v. Thompson,*
    563 U.S. 51 (2011)..................................................................4, 7, 11

*Cortec Industries, Inc. v. Sum Holding L.P.,*
    949 F.2d 42 (2d Cir. 1991)..............................................................19

**Cases**                                                                                      **Pages**

*DiPace v. Goord*,
   308 F. Supp. 2d 274 (S.D.N.Y. 2004)................................................................13

*Duplan v. City of New York*,
   888 F.3d 612 (2d Cir. 2018)...........................................................................6

*Ellison v. Hobbs*,
   786 F. App'x 861 (11th Cir. 2019) ...............................................................15

*Fernandez v. Fernandez*,
   189 N.Y.S.3d 538 (2d Dep't 2023)................................................................5

*Forrest v. County of Greene*,
   676 F. Supp. 3d 69 (N.D.N.Y. 2023) ...........................................................18

*Garcia v. Does*,
   779 F.3d 84 (2d Cir. 2015)...........................................................................18

*Greene v. City of New York*,
   773 F. Supp. 3d 94 (S.D.N.Y. 2025).....................................................15, 16

*Guan v. City of New York*,
   37 F.4th 797 (2d Cir. 2022) ...........................................................................2

*Harlow v. Fitzgerald*,
   457 U.S. 800 (1982).....................................................................................13

*Hernandez v. United States*,
   939 F.3d 191 (2d Cir. 2019)...........................................................................7

*Hershey v. Goldstein*,
   938 F. Supp. 2d 491 (S.D.N.Y. 2013)..........................................................18

*Hirsch v. Desmond*,
   No. 10-CV-4502, 2013 WL 494614
   (E.D.N.Y. Feb. 7, 2013).................................................................................12

*Houghtaling v. Downes*,
   623 F. Supp. 3d 145 (W.D.N.Y. 2022) .........................................................18

*Hunter v. Bryant*,
   502 U.S. 224 (1991).....................................................................................13

*Illinois v. Lafayette*,
   462 U.S. 640 (1983).......................................................................................9

*Malin v. XL Capital Ltd.*,
   499 F. Supp. 2d 117 (D. Conn. 2007)...........................................................19

*Matthews v. Malkus*,
   377 F. Supp. 2d 350 (S.D.N.Y. 2005)............................................................5

**Cases**                                                                                                  **Pages**

*McCabe v. Life-Line Ambulance Service, Inc.*,
    77 F.3d 540 (1st Cir. 1996) ...........................................................................11

*Mees v. Stibbe N.Y. B.V.*,
    146 N.Y.S.3d 481 (1st Dep't 2021) ................................................................5

*Milanese v. Rust-Oleum Corp.*,
    244 F.3d 104 (2d Cir. 2001) ..........................................................................20

*Nicholas v. Goord*,
    430 F.3d 652 (2d Cir. 2005) ..........................................................................10

*Oliver Schools, Inc. v. Foley*,
    930 F.2d 248 (2d Cir. 1991) ..........................................................................12

*Pearson v. Gesner*,
    125 F.4th 400 (2d Cir. 2025) .........................................................................18

*People v. Johnson*,
    74 Misc. 3d 344, 159 N.Y.S.3d 816
    (Orange Cnty. Ct. 2021) ....................................................................9, 10, 11, 12

*People v. Rosario*,
    151 Misc. 2d 1007, 574 N.Y.S.2d 490
    (Sup. Ct. Queens Cnty. 1991) .............................................................8, 11, 12

*People v. Yaniak*,
    190 Misc. 2d 84, 738 N.Y.S.2d 492 (Yates Cnty. Ct. 2001) ......................9

*Serna v. Goodno*,
    567 F.3d 944 (8th Cir. 2009) ............................................................................8

*Shrader v. CSX Transp., Inc.*,
    70 F.3d 255 (2d Cir. 1995) ............................................................................17

*Tardif v. City of New York*,
    991 F.3d 394 (2d Cir. 2021) ...............................................................14, 15, 16

*Torcivia v. Suffolk County*,
    17 F.4th 342 (2d Cir. 2021) ......................................................................11, 12

*United States v. Chadwick*,
    433 U.S. 1 (1977) ......................................................................................13, 14

*United States v. Knights*,
    534 U.S. 112 (2001) ..........................................................................................7

*Walker v. Caldwell*,
    603 F. Supp. 3d 449 (N.D. Miss. 2022) ........................................................15

*Washington v. Napolitano*,
    29 F.4th 93 (2d Cir. 2022) ................................................................................2

**Cases**                                                                                            **Pages**

*Webb v. Goord*,
   340 F.3d 105 (2d Cir. 2003)..............................................................................................6

*Wilson v. Layne*,
   526 U.S. 603 (1999)..................................................................................................13

*Ziegler v. Aukerman*,
   512 F.3d 777 (6th Cir. 2008) ....................................................................................3

**Statutes**

42 U.S.C. § 1981.............................................................................................................6

42 U.S.C. § 1985(3).........................................................................................................6

42 U.S.C. § 1986.............................................................................................................6

42 U.S.C. § 1988.............................................................................................................6

42 U.S.C. § 12182(b)(3)................................................................................................16

Fed. R. Civ. P. 10(c)......................................................................................................18

Fed. R. Civ. P. 12(b)(6)..................................................................................................1

Fed. R. Civ. P. 15..........................................................................................................17

Fed. R. Civ. P. 56(c)......................................................................................................20

Local Civ. R. 6.3............................................................................................................17

N.Y. Mental Hygiene Law § 9.39.................................................................................2, 9

N.Y. Mental Hygiene Law § 9.41...............................................................8, 9, 10, 11, 12

N.Y. Mental Hygiene Law § 33.07..........................................................................8, 11

**Other Authorities**

49 Am. Jur. Proof of Facts 3d 1 § 1 ............................................................................16

## PRELIMINARY STATEMENT

Plaintiff's motion for leave to file a Second Amended Complaint ("SAC") should be denied because it is, at its core, a thinly veiled third motion for reconsideration of this Court's prior rulings, repackaged as a motion to amend. The body-worn camera ("BWC") footage on which Plaintiff relies does not—and cannot—cure the *legal* deficiencies that compelled dismissal of Plaintiff's claims.

In deciding Defendants' motion to dismiss, Judge Schofield expressly applied the Rule 12(b)(6) standard, accepting as true every factual allegation in the Amended Complaint and drawing all reasonable inferences in Plaintiff's favor. Despite crediting Plaintiff's allegations that she was "violently handcuffed," that the cuffs were "cutting into her wrist bone," and that she was "strapped into a chair and dragged" out of her building, the Court nonetheless found these facts legally insufficient to state claims for excessive force, false imprisonment, IIED, NIED, defamation, retaliation, or conspiracy.

The BWC footage merely provides *evidence* for allegations the Court already took to be true. It changes nothing about the applicable legal standards or the Court's previous determinations. Indeed, Plaintiff's own memorandum reveals this confusion: she argues that the Court committed "error" in its "failure to accept Plaintiff's allegations as factual during the initial motion to dismiss proceeding." But Plaintiff's quarrel is with the law, not the facts, and no amount of video evidence can alter the governing legal framework.

As to Plaintiff's one genuinely new claim—the Fourth Amendment search allegation against Officer Coghlan—the claim is futile because it is barred by qualified immunity, and the conduct alleged is consistent with routine identification procedures during an involuntary psychiatric transport.

**ARGUMENT**

**POINT I**

**THE REASSERTED CLAIMS ARE FUTILE BECAUSE THE BWC FOOTAGE DOES NOT CURE THE LEGAL DEFICIENCIES IDENTIFIED IN THIS COURT'S PRIOR ORDERS**

Plaintiff seeks to reassert claims for false imprisonment, excessive force, defamation, IIED, NIED, retaliation, and conspiracy—all of which were dismissed by this Court's Opinion and Order (ECF No. 41) and affirmed on reconsideration (ECF Nos. 50, 58). Each claim was dismissed on legal grounds that are unaffected by the BWC footage.

**A.    False Imprisonment**

This Court dismissed Plaintiff's false imprisonment claim because "probable cause existed to subject Plaintiff to a psychological evaluation" as a matter of law. (ECF No. 41 at 15.) Citing *Guan v. City of New York*, 37 F.4th 797, 807 (2d Cir. 2022), and N.Y. Mental Hygiene Law § 9.39, the Court held that Plaintiff's email stating "I am go[i]ng to kill myself if this doesn't stop!" provided "a reasonable basis for believing that Plaintiff was a danger to herself." *Id*. at 16. The Court further held that "once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Id*. (quoting *Washington v. Napolitano*, 29 F.4th 93, 105 (2d Cir. 2022)).

The BWC footage is irrelevant to this analysis. The probable cause determination rests on what was known at the time the officers arrived at Plaintiff's door—namely, her own written suicide threat. The proposed SAC adds additional detail about Plaintiff's protestations at the scene (¶¶ 149–156), but the Amended Complaint already alleged that Plaintiff "clearly stated over and over and over again that she was not suicidal." (SAC ¶ 149.) The Court credited this

2

allegation and still found probable cause. Video confirming what the Court already assumed to be true does not alter the legal conclusion.

Indeed, the very BWC footage on which Plaintiff relies, undermines her position. At approximately 15:24:44, when asking about whether Plaintiff expressed a desire to harm herself, an EMT asks Plaintiff what she said in the inciting email; Plaintiff responds "I said if you don't stop this pain and stop the fumes, I am going to have to—I'm not going to have any other option to stop the pain." (*See* Body Worn Camera of Officer Coghlan, attached to Declaration of John McLaughlin ("McLaughlin Decl.") as Exhibit A, at 15:24:44.) The EMT then asks Plaintiff whether she "want[s] to hurt herself right now," Plaintiff responds: "Not right now **because there's no fumes coming into my apartment at this moment**." (*See id.* at 15:25:00.) This conditional denial of a desire to self-harm—tying her safety to the temporary absence of an environmental trigger neither she nor the officers present can control—would only have reinforced a reasonable officer's belief that Plaintiff posed a risk to herself. Far from negating probable cause, Plaintiff's own words on the BWC footage reinforce it.

This Court's ruling is squarely in line with the weight of authority. *See Barkai v. Mendez*, No. 21 Civ. 4050, 2024 WL 811561, at *50 (S.D.N.Y. Feb. 21, 2024) (officers not required to accept plaintiff's assurances of wellbeing when responding to a mental health crisis); *see also Ziegler v. Aukerman*, 512 F.3d 777, 783 (6th Cir. 2008) ("a mental health seizure can rest upon probable cause even when the person seized does not actually suffer from a dangerous mental condition"). Thus, amendment would be futile.

## B.    Excessive Force

This Court dismissed Plaintiff's excessive force claim on two independent grounds. First, the Amended Complaint failed to "plead a municipal policy of employing excessive force against people reported for suicidal risks." (ECF No. 41 at 16.) Second, under

3

state law, "[t]ight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort," with "scarring and nerve damage" being the most common qualifying injuries. *Id.* (citing *Burris v. Nassau Cnty. Dist. Att'y*, No. 14 Civ. 5540, 2022 WL 889027, at *4 (E.D.N.Y. Mar. 25, 2022); *Christian v. City of New York*, 179 N.Y.S.3d 64, 65 (1st Dep't 2022)).

Neither deficiency is cured by the SAC. On *Monell* liability, the SAC still alleges only a single incident. A single incident does not establish a municipal policy or custom of employing excessive force. *See Connick v. Thompson*, 563 U.S. 51, 61 (2011); *see also* ECF No. 41 at 21–22 (dismissing failure-to-train claim for same reason).

On injury, the SAC adds allegations of redness, swelling, and indentations from the handcuffs, as well as back spasms during transport. (SAC ¶¶ 163–185.) But these allegations describe precisely the "temporary discomfort" that this Court credited in its analysis and found insufficient. The BWC incorporated by reference in Plaintiff's SAC confirms that, as soon as Plaintiff was transported to the ambulance and seated on the stretcher, Officer Coghlan adjusted the handcuffs in response to her complaints of discomfort. (*See* Body Worn Camera of Officer Coghlan, attached to Declaration of John McLaughlin ("McLaughlin Decl.") as Exhibit A, at 16:13:25–16:13:26.) The SAC does not allege scarring, nerve damage, or any permanent injury caused by the handcuffs—as distinct from Plaintiff's extensive pre-existing conditions. Plaintiff's argument is essentially that standard restraint procedures caused more pain because of her pre-existing injuries. But that does not convert objectively reasonable force into excessive force as a matter of law.

## C.    Defamation

This Court held that CCHR's report of Plaintiff's suicide threat was "neither false nor derogatory." (ECF No. 41 at 17–18.) The Court found that reporting someone's statement "I

am going to kill myself" is not an objectively false statement, and that a report of a suicide threat is "not inherently defamatory" because "our society has advanced beyond the point when calling for help when having suicidal feelings is considered degrading." *Id.* at 18 (quoting *Matthews v. Malkus*, 377 F. Supp. 2d 350, 358 (S.D.N.Y. 2005)).

The BWC footage has no bearing whatsoever on this analysis, which turns entirely on the content of Plaintiff's email and CCHR's report—not on what occurred at the apartment. The SAC adds no new allegations about the content of CCHR's report and the claim remains futile.

## D.    Intentional and Negligent Infliction of Emotional Distress

This Court dismissed the IIED claim because responding to a suicide threat and conducting a mental health evaluation "do not meet the high bar of 'extreme and outrageous conduct.'" (ECF No. 41 at 19 (citing *Chanko v. Am. Broad. Cos.*, 49 N.E.3d 1171, 1178 (N.Y. 2016))). The SAC's additional graphic detail about the transport—back spasms, handcuff pain, use of the chair—does not transform a lawful mental health response into conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Chanko*, 49 N.E.3d at 1178.

The NIED claim likewise remains futile. The proposed SAC, like the Amended Complaint, alleges only intentional conduct. "Allegations of intentional conduct . . . cannot form the basis of a negligence claim." *Fernandez v. Fernandez*, 189 N.Y.S.3d 538, 541 (2d Dep't 2023); *see also Mees v. Stibbe N.Y. B.V.*, 146 N.Y.S.3d 481, 481–82 (1st Dep't 2021). The SAC does not cure this fundamental pleading defect.

## E.    Retaliation

This Court dismissed the retaliation claim because the causal link between Plaintiff's threat to sue (April 28, 2022) and CCHR's report to police (May 6, 2022) was

"severed by Plaintiff's intervening suicide threat." (ECF No. 41 at 21 (applying *Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 104 (2d Cir. 2020))). The Court further noted that "CCHR's report of the threat was not untrue." *Id.*

The BWC footage has nothing to do with this analysis, which turns on the timeline—threat to sue, then suicide email, then police report—and the doctrine of intervening causation. The SAC adds no new allegations about CCHR's motive or the sequence of events. This claim is futile for the same reasons.

**F.    42 U.S.C. §§ 1981, 1985(3), 1986, and 1988**

This Court dismissed the § 1981 claim because it cannot be brought against state actors. (ECF No. 41 at 14 (citing *Duplan v. City of New York*, 888 F.3d 612, 616 (2d Cir. 2018))). The § 1985(3) conspiracy claim was dismissed for failure to allege "some factual basis supporting a meeting of the minds." (*Id.* (citing *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003))). The § 1986 and § 1988 claims were dismissed as derivative. *Id.* at 15.

The BWC footage does not reveal any conspiratorial agreement between CCHR employees and NYPD/FDNY personnel. The SAC adds no new factual allegations about a meeting of the minds. These claims remain futile.

**G.    Failure to Train and Negligent Supervision**

This Court dismissed the failure-to-train claim because the Amended Complaint "does not allege a pattern of similar constitutional violations beyond Plaintiff's single encounter with CCHR, NYPD and FDNY EMS." (ECF No. 41 at 22.) The negligent supervision claim was dismissed because the Amended Complaint did not allege actual or constructive knowledge by the City. (*Id.* at 22–23.)

The SAC adds no new allegations of a pattern involving other individuals. Plaintiff's own serial encounters with law enforcement do not constitute the "pattern of similar

constitutional violations by untrained employees" required for *Monell* liability. *See Hernandez v. United States*, 939 F.3d 191, 206–07 (2d Cir. 2019); *see also Connick*, 563 U.S. at 61. The BWC footage documents a single incident. Once again, amendment is futile.

## POINT II

### PLAINTIFF'S NEW FOURTH AMENDMENT CLAIM IS FUTILE

Plaintiff's one genuinely new claim alleges that Officer Coghlan searched her bag and photographed her identification cards without consent inside the ambulance. (SAC ¶¶ 188–191.) While Defendants acknowledge that this claim is based on conduct Plaintiff could not have known about prior to viewing the BWC footage, the claim is nevertheless futile for three independent reasons: (1) Coghlan's conduct was reasonable under the totality of the circumstances; (2) the special needs doctrine independently justifies the examination; and (3) the proposed SAC fails to allege a *Monell* policy. Additionally, to the extent the Court considers qualified immunity on the face of the pleading—and Defendants respectfully submit that the circumstances here warrant such consideration—the absence of any on-point authority confirms the claim's futility.

## A.    Officer Coghlan's Conduct Was Reasonable Under the Totality of the Circumstances.

The Fourth Amendment prohibits only *unreasonable* searches. Reasonableness "is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *United States v. Knights*, 534 U.S. 112, 118–19 (2001). Three considerations establish the reasonableness of Officer Coghlan's conduct here.

**(1) Plaintiff's Privacy Interest Was Reduced by Her Custodial Status and Imminent Hospital Admission.**

Plaintiff was in lawful custody pursuant to N.Y. Mental Hygiene Law § 9.41 when Coghlan examined her bag and photographed her identification. While persons subject to involuntary psychiatric transport retain Fourth Amendment protections, their privacy interest is not equivalent to that of a free citizen. *See Serna v. Goodno*, 567 F.3d 944, 948 (8th Cir. 2009) (holding as matter of first impression that an "involuntarily civilly committed person retains right to be free from unreasonable search that is analogous to that of pretrial detainee"—i.e., diminished but not extinguished); *Brooks v. Hogan*, No. 9:11-CV-0523, 2013 WL 1294274, at *5 (N.D.N.Y. Jan. 31, 2013) (involuntarily committed patients have "diminished privacy expectations compared to free citizens," though they do not "check their constitutional rights at the door").

Critically, Plaintiff was not merely in civil custody—she was *en route to a hospital* where her belongings would be inventoried and her identification obtained as a matter of routine admission procedure. Courts have consistently upheld hospital inventory searches upon involuntary admission. *See People v. Rosario*, 151 Misc.2d 1007, 1009, 574 N.Y.S.2d 490 (Sup. Ct. Queens Cnty. 1991) (finding it "entirely reasonable for the hospital to assign its employees the task of searching patients' personal property upon their admittance to the facility"); *see also* N.Y. Mental Hygiene Law § 33.07 (authorizing psychiatric facility directors to "take temporary custody of the patient's personal property upon the person of the patient"). The privacy interest in identification documents is at its lowest ebb when the subject is being lawfully transported to a facility that will require disclosure of that very information as a condition of admission. *Cf. Aiken v. Nixon*, 236 F. Supp. 2d 211, 228–29 (N.D.N.Y. 2002) (applying reasonableness

balancing test to searches of involuntary psychiatric patients' belongings under special needs doctrine).

### (2) The Government's Interest in Identification Was Significant.

The government had a substantial interest in accurately identifying Plaintiff during the psychiatric transport. Proper identification is essential to hospital intake—including accessing prior medical and psychiatric records, administering appropriate treatment, contacting next of kin, and completing the documentation required by MHL §§ 9.39 and 9.41. Misidentification of a psychiatric patient can have serious medical consequences.

As the Supreme Court recognized in *Illinois v. Lafayette*, 462 U.S. 640, 646 (1983), it is reasonable for officers to search personal effects of a person under lawful detention "as part of the routine administrative procedure . . . incident to booking and jailing the suspect." While *Lafayette* involved a criminal arrest, the administrative logic applies with equal or greater force to a civil psychiatric transport, where the purpose of identification is medical rather than investigative.

The non-law-enforcement character of Coghlan's conduct is significant. New York courts have consistently upheld searches in non-criminal custodial settings when designed to serve legitimate safety or administrative purposes. *See Matter of Bernard G.*, 247 A.D.2d 91, 679 N.Y.S.2d 104 (1st Dep't 1998); *People v. Yaniak*, 190 Misc.2d 84, 738 N.Y.S.2d 492 (Yates Cnty. Ct. 2001). In *People v. Johnson*, 74 Misc.3d 344, 348, 159 N.Y.S.3d 816 (Orange Cnty. Ct. 2021), the court applied these principles to an MHL § 9.41 transport and upheld a pat-down search of a person taken into custody for involuntary psychiatric evaluation. The court emphasized that "although Johnson's detention and placement into custody was not the result of any unlawful activity, the police were justified in conducting a pat down in order to ensure the safety of the EMTs, hospital staff, and Johnson himself." *Id.* The court found dispositive that

9

"[t]he noncriminal nature of Johnson being in custody does not eliminate the dangers inherent in a custodial situation" and that the pat-down was conducted pursuant to "a general policy of the City of Newburgh Police Department to conduct a safety search on anyone entering an ambulance to be transported to the hospital." *Id.* at 347–48. On this basis, the court held that "[t]he minimally intrusive conduct of the pat down was reasonable and lawful under the totality of the circumstances." *Id.* at 349.

The *a fortiori* inference from *Johnson* is compelling. If a pat-down search—which involves physical contact with the person's body and may reveal intimate details—is reasonable during an MHL § 9.41 transport for safety purposes, then a brief examination of a bag and photographing of identification for the purpose of facilitating medical intake is reasonable as well, given that the intrusion is categorically lesser and the purpose is administrative rather than protective.

### (3) The Intrusion Was *De Minimis.*

Officer Coghlan did not seize Plaintiff's belongings or remove them from her possession. He briefly examined the contents of her bag, photographed her identification cards, relayed the relevant information to the EMT in the ambulance, and returned everything. The BWC footage itself—Plaintiff's own exhibit—reveals the brevity and limited scope of this interaction. (*See* McLaughlin Decl., Exhibit A, at 16:29:06–16:30:07.)

### B.    The Special Needs Doctrine Independently Justifies the Search.

Even if the Court does not find Coghlan's conduct justified under the general reasonableness balancing test, it is independently supported by the special needs doctrine. Where a search serves "special needs, beyond the normal need for law enforcement," courts apply a balancing test rather than requiring a warrant or probable cause. *Nicholas v. Goord*, 430 F.3d 652, 658 (2d Cir. 2005).

The special needs doctrine has been applied in closely analogous contexts. In *Aiken v. Nixon*, 236 F. Supp. 2d at 229, the court held that psychiatric center searches were permissible under the special needs doctrine to protect "the welfare of the patients and staff." In *Torcivia v. Suffolk County*, 17 F.4th 342, 361 (2d Cir. 2021), the Second Circuit upheld firearms seizure during psychiatric transport under the special needs doctrine. In *McCabe v. Life-Line Ambulance Service, Inc.*, 77 F.3d 540, 544 (1st Cir. 1996), the First Circuit recognized that the "special need" exception to the warrant requirement may apply in involuntary commitment proceedings. And in *Johnson*, the court upheld a pat-down search during an MHL § 9.41 ambulance transport, noting the "legitimate state interest in ensuring that persons who are incoherent . . . receive treatment." 74 Misc.3d at 348.

The logic is straightforward: if it is permissible for hospital staff to search patient belongings for identification upon involuntary admission—and it is, *see Rosario*, 151 Misc.2d at 1009; MHL § 33.07—then the same administrative function may reasonably be performed by the officer facilitating that admission during the transport phase, where the government's interest in accurate identification is identical and the subject's privacy interest is no greater than it will be upon arrival. The ambulance is not a separate constitutional universe from the hospital; it is the intermediate step in a continuous process of lawful civil custody, transport, and admission.

## C.    No *Monell* Policy Is Alleged.

To the extent this claim is asserted against the City, it fails for the additional reason that the SAC does not allege any municipal policy or custom of officers conducting warrantless searches during psychiatric transports. A single incident cannot establish *Monell* liability. *See Connick v. Thompson*, 563 U.S. 51, 61 (2011).

**D.    The Absence of Relevant Authority Confirms This Claim's Futility.**

The legal landscape surveyed above demonstrates that no court has addressed whether an officer may photograph a subject's identification during an involuntary psychiatric transport to facilitate hospital intake. This absence of authority is relevant in two respects.

First, it reinforces the reasonableness of Coghlan's conduct on the merits. Courts have upheld safety pat-downs during MHL § 9.41 transports, *Johnson*, 74 Misc.3d at 348; hospital inventory searches of patient belongings upon admission, *Rosario*, 151 Misc.2d at 1009; searches of psychiatric patients' belongings under the special needs doctrine, *Aiken*, 236 F. Supp. 2d at 229; and firearms seizure during psychiatric transport, *Torcivia*, 17 F.4th at 361. These authorities collectively establish that officers may take reasonable administrative actions incident to lawful psychiatric custody—and photographing identification for hospital intake falls comfortably within that range.

Second, the absence of contrary authority bears on qualified immunity. Defendants recognize that the Second Circuit has held that qualified immunity is generally "not a valid basis for denying leave to amend" because it is "an affirmative defense that the defendants have the burden of raising in their answer and establishing at trial or on a motion for summary judgment." *Oliver Schools, Inc. v. Foley*, 930 F.2d 248, 253 (2d Cir. 1991). The rationale underlying this rule is that qualified immunity involves a "fact-specific inquiry" that "makes it generally premature to address the defense . . . in a motion to dismiss." *Hirsch v. Desmond*, No. 10-CV-4502, 2013 WL 494614, at *4 (E.D.N.Y. Feb. 7, 2013). But that rationale does not hold here. Plaintiff has incorporated stills from the BWC footage into her proposed SAC and supporting affidavit. In opposition, Defendants submit the complete, unedited BWC footage, which is integral to the SAC and properly before the Court. *See* Point V, *infra*; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). The footage captures the entirety of Officer

Coghlan's interaction with Plaintiff's bag and identification cards. There is no factual dispute about what occurred—only a legal question about whether that conduct violated clearly established law.

Where the operative facts are undisputed and before the Court, the purposes underlying qualified immunity—sparing public officials "the costs of trial" and "the burdens of broad-reaching discovery," *Harlow v. Fitzgerald*, 457 U.S. 800, 817–18 (1982)—counsel in favor of resolution at the earliest practicable stage. *See Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987); *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam) (qualified immunity is "an immunity from suit rather than a mere defense to liability" and "it is effectively lost if a case is erroneously permitted to go to trial"). District courts within this Circuit have accordingly denied leave to amend on futility grounds where qualified immunity is apparent from the face of the proposed pleading. *See DiPace v. Goord*, 308 F. Supp. 2d 274 (S.D.N.Y. 2004); *Atkins v. Latanzio*, 918 F. Supp. 668 (W.D.N.Y. 1995).

Here, Plaintiff's own allegations—and the complete BWC footage—demonstrate on the face of the SAC that no clearly established right was violated, because no authority exists prohibiting an officer from photographing identification during a lawful psychiatric transport. "If judges thus disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy." *Wilson v. Layne*, 526 U.S. 603, 618 (1999). The most analogous case Plaintiff cites—*United States v. Chadwick*, 433 U.S. 1 (1977)—involved the warrantless search of a double-locked footlocker seized during a criminal narcotics investigation based on probable cause to believe it contained contraband. *Chadwick* is inapposite in every material respect: it involved a criminal investigation, a full search of a locked container, an expectation of privacy in a locked item, and a law enforcement purpose. Here, Coghlan was

13

facilitating a medical administrative function, briefly examined an unlocked bag, photographed identification cards, relayed that information to an EMT and had no law enforcement purpose. No reasonable officer would look to *Chadwick* and conclude that his conduct was prohibited.

## POINT III

## ADDING FDNY EMTS AS DEFENDANTS IS FUTILE AND IMPROPER

Plaintiff seeks to add three FDNY-EMTs as defendants. This Court has already denied Plaintiff's requests for EMT identification. (*See* ECF Nos. 62, 63, 68.) While ECF No. 68 left open the possibility of a new request if leave to file a Second Amended Complaint is granted, the addition of the EMTs is futile as to all claims except the surviving ADA failure-to-accommodate claim.

With respect to the claims dismissed by this court already—excessive force, IIED, NIED, false imprisonment, defamation, retaliation, and conspiracy—adding EMTs as defendants does not cure the legal deficiencies. (ECF No. 41.) Those claims fail regardless of whether the defendants are police officers, EMTs, or both.

As to the ADA failure-to-accommodate claim, Plaintiff argues that the BWC footage shows EMTs were "as involved in the physical abuse of Plaintiff's disability rights as the police." (ECF No. 80 at 2.) However, the surviving ADA claim as framed by this Court (ECF No. 58) is narrowly focused on the failure to accommodate Plaintiff's back injuries during transport. The question is whether the EMTs' choice of transport method (chair versus stretcher) constitutes a denial of a reasonable accommodation under ADA Title II, or a challenge to the "substance of the services provided," which is not actionable. *See Tardif v. City of New York*, 991 F.3d 394, 405 (2d Cir. 2021).

The answer is the latter. Courts have drawn a critical distinction between administrative decisions about *whether* to provide emergency medical services—which are subject to full ADA scrutiny—and clinical treatment decisions about the *adequacy* of care provided, which receive significantly more deference. *See Greene v. City of New York*, 773 F. Supp. 3d 94 (S.D.N.Y. 2025) (holding that ADA claims challenging emergency response lie where plaintiffs are denied a medical response altogether because of their mental disability, not where they challenge the quality of medical services received). Plaintiff's claim falls squarely on the non-actionable side of this line. She does not allege that the EMTs refused to transport her or denied her emergency medical services because of her disability. Rather, she challenges the EMTs' *method* of transport—the selection of a transport chair over a stretcher—which is precisely the type of challenge to the "substance of the services provided" that this Court already recognized is not actionable under the ADA. *See Tardif*, 991 F.3d at 405.

EMTs possess statutory authority to make transport decisions during psychiatric emergencies, including assessments of medical decision-making capacity and the selection of appropriate conveyance methods. *See Ellison v. Hobbs*, 786 F. App'x 861 (11th Cir. 2019) (recognizing that EMTs and paramedics are authorized to make transport decisions, including capacity assessments, and that "the clinical judgment of the providers on-scene remain sovereign"); *Walker v. Caldwell*, 603 F. Supp. 3d 449, 459 (N.D. Miss. 2022) (holding that decisions made by paramedics and EMTs in the field must be evaluated under the standards specific to that profession). The EMTs' selection of a transport chair was a clinical judgment made in the field during an active psychiatric emergency—precisely the type of on-scene decision that courts have recognized falls within the professional discretion of emergency medical personnel.

Critically, the ADA does not contain a broad medical judgment exemption for emergency medical services. The statute provides only a narrow "direct threat" exception permitting exclusion of individuals who pose "a significant risk to the health or safety of others." 42 U.S.C. § 12182(b)(3). But Plaintiff's claim does not implicate the direct threat framework at all—because her claim is not that she was excluded from services on account of a perceived threat, but that the services she received were inadequate. That distinction is dispositive. Where, as here, a plaintiff received emergency medical transport and challenges only the clinical decisions made during that transport, her claim sounds in medical malpractice, not disability discrimination. *See Tardif*, 991 F.3d at 405 (holding that "no ADA violation exists when an individual challenges the substance of the services provided—rather than illegal discrimination"); *Greene*, 773 F. Supp. 3d at 94 (distinguishing between discriminatory denial of medical response and dissatisfaction with treatment received).

The SAC contains no allegation that the EMTs selected the transport chair *because of* Plaintiff's disability, as opposed to in the exercise of their professional judgment during the transport. Nor does the SAC allege that the EMTs would have used a stretcher for a non-disabled person in the same circumstances. ADA liability requires "a showing of discriminatory animus or unreasonable failure to accommodate rather than the mere exercise of medical discretion." 49 Am. Jur. Proof of Facts 3d 1 § 1. The SAC's allegations, taken at face value, establish at most that the EMTs clinical choice may not have been ideal—not that they discriminated against Plaintiff on the basis of her disability. Adding the EMTs as defendants to the ADA claim is therefore futile.

16

## POINT IV

## PLAINTIFF'S MOTION IS AN IMPROPER SERIAL MOTION FOR RECONSIDERATION

**A.    Plaintiff Still Fails to Identify a Defamatory Statement, as Required.**

Plaintiff's motion expressly asks this Court to "VACATE (ECF No.s 60, 62, 63)" regarding EMT disclosure and to reconsider prior rulings on dismissed claims. (ECF No. 80 at 9.) This is Plaintiff's fourth request for EMT identification and her third attempt to revive dismissed claims against the NYPD and FDNY-EMT defendants.

Under Local Civil Rule 6.3, a motion for reconsideration must "demonstrate that the court overlooked controlling decisions or factual matters that, if considered, would warrant a different result." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). The BWC footage does not constitute "controlling decisions or factual matters" that the Court "overlooked"—it is evidence of facts the Court already accepted as true. Reconsideration is not warranted.

## POINT V

## OFFICERS' BODY WORN CAMERA FOOTAGE IS PROPERLY BEFORE THE COURT

Defendants respectfully submit Officer Connor Coghlan's complete, unedited BWC footage from the May 6, 2022 incident in opposition to Plaintiff's motion.[1] (*See* McLaughlin Decl., Exhibit A.) The footage is properly before the Court for two independent reasons.

---

[1] Plaintiff also incorporates screenshots from the BWC footage of Officer McGovern and Officer Hanson covering the same incident. In the interest of efficiency, Defendants do not presently attach those videos, as the entire incident is covered completely and adequately by Officer Coghlan's BWC.

**A.    The Footage Is Integral to the Proposed SAC.**

On a motion to dismiss—and by extension, on a futility analysis under Rule 15—the Court may consider documents outside the pleadings when they are "integral to the complaint," meaning the complaint "relies heavily upon [their] terms and effect." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *see also Pearson v. Gesner*, 125 F.4th 400 (2d Cir. 2025) (reaffirming that "extraneous materials . . . become integral parts of the complaint" when "the plaintiff relied on them in drafting the complaint"). Courts within this Circuit have applied this principle to video evidence. *See Hershey v. Goldstein*, 938 F. Supp. 2d 491, 498–99 (S.D.N.Y. 2013) (considering security camera footage incorporated by reference where plaintiff "references this video footage in the Amended Complaint"); *Houghtaling v. Downes*, 623 F. Supp. 3d 145, 152 (W.D.N.Y. 2022) (finding video recording incorporated by reference where plaintiff made "clear and definite references to the video recording" in complaint and attached documents).

Here, Plaintiff's proposed SAC and supporting affidavit do not merely reference the BWC footage in passing. The SAC's factual narrative of the events inside the ambulance is drawn almost entirely from Plaintiff's review of the footage. Plaintiff attaches selected stills from the BWC to her papers. (ECF No. 79-1.) And Plaintiff explicitly acknowledges that the footage is the foundation for her new allegations and the basis for seeking amendment. (*See* Affidavit in Support of Motion to Amend, ECF 81 at ¶ 6.) The BWC footage is thus "integral" to the SAC under any reasonable construction of *Chambers*: it is the document "upon which the [SAC] solely relies" for its new factual allegations. *See id.* at 153.[2]

---

[2] The Second Circuit has not resolved whether video footage constitutes a "written instrument" under Federal Rule of Civil Procedure 10(c). *See Garcia v. Does*, 779 F.3d 84, 87 (2d Cir. 2015). But that question is immaterial here, because the incorporation-by-reference doctrine under

**B.      Plaintiff Cannot Selectively Invoke the Footage.**

Plaintiff cannot rely on selected stills and descriptions from the BWC footage to support her claims while simultaneously shielding the complete footage from the Court's review. Where a plaintiff places a document at issue by selectively quoting or referencing it, the opposing party may submit the full document to prevent misleading selective presentation. *See Malin v. XL Capital Ltd.*, 499 F. Supp. 2d 117, 129 (D. Conn. 2007) ("[W]hen a complaint quotes documents only in part and omits critical portions of the documents, it is permissible for the court ruling on a motion to dismiss to consider the full texts of the quoted documents," because refusing to do so would mean that "complaints that quoted only selected and misleading portions of such documents could not be dismissed . . . even though they would be doomed to failure."); *see also Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir. 1991).

The principle applies with particular force to video evidence. Screenshots are, by their nature, selective extractions from a continuous recording. They capture isolated moments divorced from the context of what came before and after. Permitting Plaintiff to build her factual narrative on cherry-picked frames while denying the Court access to the complete footage would create precisely the danger that the integral-documents doctrine is designed to prevent: allowing a plaintiff to "evade the consequences of its own allegations" by controlling which portions of the operative evidence the Court may see.

---

*Chambers* is not limited to "written instruments"—it applies to any document that is integral to the complaint. *See Chambers*, 282 F.3d at 153; *Forrest v. County of Greene*, 676 F. Supp. 3d 69, 79 (N.D.N.Y. 2023) (considering video recordings where parties did not contest inclusion).

**C.    The Court Has Discretion to Consider the Complete Evidentiary Record.**

Alternatively, the Court may consider the BWC footage in evaluating futility under its discretion to apply a summary judgment standard when extrinsic evidence is before it. The Second Circuit has held that when a motion to amend is accompanied by extrinsic evidence from both parties and the factual record is sufficiently developed, "the court may deny the amendment as futile when the evidence in support of the plaintiff's proposed new claim creates no triable issue of fact and the defendant would be entitled to judgment as a matter of law under Fed. R. Civ. P. 56(c)." *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001).

District courts within this Circuit have identified factors supporting application of the summary judgment standard to futility analysis: "(1) both parties submit extrinsic evidence along with their pleadings; (2) no further discovery is necessary on the issues presented in the proposed amended pleading; (3) neither party objects to the court's use of the motion for summary judgment standard; and (4) assessment under a motion to dismiss standard would itself be futile because the proposed claims, if allowed to proceed, would be immediately subject to dismissal through a summary judgment motion." *Chapman v. N.Y. State Div. for Youth*, No. 9:07-CV-1278, 2010 WL 11565152, at *5 (N.D.N.Y. June 10, 2010). Here, Plaintiff has submitted BWC stills and an affidavit describing the footage; Defendants submit the complete footage in response. The BWC captures the entire incident from start to finish. No further factual development is necessary—and indeed, none is possible—on the question of what occurred in the ambulance.

**CONCLUSION**

For the reasons set forth herein, defendants respectfully request that the Court deny Plaintiff's motion for leave to file a Second Amended Complaint, together with such other and further relief as the Court deems just and proper.

Dated:        New York, NY
              February 24, 2025

                                        STEVEN BANKS
                                        Corporation Counsel of the City of New York
                                        *Attorney for Defendants the City of New York,*
                                        *    Hanson, Alavanja, Darnaud, McGovern, and*
                                        *    Coghlan*
                                        100 Church Street
                                        New York, New York 10007
                                        (212) 356-2670

                          By:      /s/ *John McLaughlin*
                                   _____
                                   John McLaughlin
                                   *Assistant Corporation Counsel*
                                   Special Federal Litigation

Cc:    **VIA ECF**
       Kelly MacNeal
       507 W 28th Street
       Apt. 26D
       New York, NY 10001
       Email: Macnificent2016@gmail.com
       *Plaintiff Pro Se*

## <u>CERTIFICATION</u>

In accordance with Local Civil Rule 7.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, I hereby certify that the total number of words in the foregoing Memorandum of Law, inclusive of point headings and footnotes, is 5,887.  I have relied on the word count function of Microsoft Word to prepare this certification.

Dated:       New York, New York
             February 24, 2026

                                        STEVEN BANKS
                                        Corporation Counsel of the City of New York
                                        *Attorney for Defendant City of New York*
                                        100 Church Street
                                        New York, New York 10007
                                        (212) 356-2670

                                        By: /s/ *John McLaughlin*
                                             John McLaughlin
                                             *Assistant Corporation Counsel*
                                             Special Federal Litigation

23 Civ. 5890 (LGS)(JW)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KELLY MACNEAL,

Plaintiff,

-against-

NEW YORK CITY COMMISSION ON HUMAN RIGHTS,
SAPNA RAJ, JACQUELINE RIOS, THE CITY OF NEW
YORK, SERGEANT BRYAN HANSON, OFFICER
NICKOLAS ALAVANJA, OFFICER DYLAN DARNAUD,
OFFICER BRENDAN MCGOVERN, OFFICER NICK
MICKOVIC, and OFFICER CONNOR COGHLAN,

Defendants.

**MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S MOTION FOR LEAVE TO FILE A
SECOND AMENDED COMPLAINT**

**STEVEN BANKS**
Corporation Counsel of the City of New York
*Attorney for Defendants the City of New York, Hanson,
Alavanja, Darnaud, McGovern, and Coghlan*
100 Church Street
New York, New York 10007

Of Counsel: John McLaughlin
Tel:  (212) 356-2670

*Due and timely service is hereby admitted.*

*New York, N.Y.  ..........................................., 2026*

*..........................................................Esq.*

*Attorney for ...........................................................*