UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X

KELLY MACNEAL,                                      :

                     Plaintiff,     :           23- cv-5890 – (LGS)(JW)

                               :

        -against-                       :                   REPLY
                               :         TO OPPOPSITION OF
THE CITY OF NEW YORK,                      :         MOTION FOR LEAVE TO FILE
                Defendant(s),   :       SECOND AMENDED COMPLAINT
------------------------------------------------------------ X       BASED ON NEW EVIDENCE

## TABLE OF CONTENTS

PRELIMINARY STATEMENT……………………………………………………………1

POINT I - BWC CURES DEFICIENCIES IN COURT'S PRIOR ORDERS……,…………1

A. False Imprisonment……………………………………………………………………2

B. Excessive Force………………………………………………………………………5

C. Defamation……………………………………………………………………………7

D. Intentional and Negligent Infliction of Emotional Distress………………………......7

E. Retaliation……………………………………………………………………….......7

F. 42 U.S.C. §§ 1981, 1985(3), 1986, and 1988…………………………………………8

G. Failure to Train and Negligent Supervision……………………………………………9

POINT II - PLAINTIFF'S NEW FOURTH AMENDMENT CLAIM IS NOT FUTILE…...9

A. Coghlan's Conduct Was Unreasonable Under the Totality of the Circumstances…......10
    (1) Plaintiff's Privacy Interest Was Not Reduced by Her Custodial Status and
        Imminent Evaluation at the Hospital.………………………………………...11
    (2) The Government's Interest in Identification Was Not Significant……………..12
    (3) The Intrusion Was Not De Minimis……………………………………………12

B. The Special Needs Doctrine Does Not Justify the Search…………………………….13

C. A Monell Policy Is Alleged……………………………………………………………13

D. Relevant Authority Confirms This Claim's Viability and Qualified Immunity is
    Inapplicable…………………………………………………………………………..13

POINT III - ADDING FDNY EMTS AS DEFENDANTS IS PROPER……………………14
POINT IV - MOTION IS NOT IMPROPER MOTION FOR RECONSIDERATION…….16

A. Plaintiff Has Identified Defamatory Statements, Motion Properly Seeks Relief Based
    on New Evidence……………………………………………………………….........17

POINT V – BWC IS PROPERLY BEFORE COURT, BUT DOES NOT JUSTIFY
    DENYING AMENDMENT AT THIS STAGE……………………………………..18

A. The Footage Is Integral to the Proposed SAC, But Supports Amendment……………18

B. Plaintiff Has Not Selectively Invoked the Footage…………………………………...19

C. The Court Should Not Exercise Discretion to Apply Summary Judgment Standard….19

## PRELIMINARY STATEMENT

This reply is submitted by the pro se Plaintiff and begs the Court to excuse the length as she was not afforded time to edit it. Though Defendants were given an extension (ECF No. 83), Plaintiff's urgent request for an extension (ECF No.86), fallowing a trip to the Emergency Room after another injury that complicated her existing injuries and caused further pain that has left Plaintiff unable to even sit at her computer for any length of time, was ignored. That aside, the Court has continually demanded so much detail on every claim, that it has made it impossible to present the information required in the page constraints requested. But then again, no Plaintiff represented by counsel would ever have such demands placed on them at this stage of proceedings. This Plaintiff has been forced to prove … with evidence … every claim that has survived dismissal. This has been an inversion of the pro se doctrine. For these reasons, the Plaintiff must respectfully request that her full reply, in its unedited form, be heard as presented below.

## POINT I
## THE REASSERTED CLAIMS ARE NOT FUTILE BECAUSE THE BWC FOOTAGE DOES CURE THE LEGAL DEFICIENCIES IDENTIFIED IN THIS COURT'S PRIOR ORDERS

Plaintiff's motion to amend and reassert claims for false imprisonment, excessive force, defamation, IIED, NIED, retaliation, and conspiracy is unequivocally not futile. The newly obtained BWC footage delivers irrefutable evidence that decisively addresses and overcomes the legal deficiencies highlighted in the Court's prior orders (ECF Nos. 41, 50, 58). This includes explicit officer statements that establish a municipal policy or custom under Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978), undeniable confirmation of the responders' refusal to properly conduct an on-scene evaluation with consideration of Plaintiff's rights, deliberate and contemptuous disregard of Plaintiff's excruciating pain and documented

disability during handcuffing and the wholly inappropriate manner in which she was transported. Additional facts revealed by this evidence robustly support each of Plaintiff's claims. The footage not only undermines, but demolishes, Defendants' mischaracterizations, creating genuine and material issues of fact that demand survival beyond dismissal and compel reinstatement of prematurely dismissed claims in the interest of justice.

## A. False Imprisonment

The BWC footage is not merely relevant—it is pivotal and categorically cures the deficiencies in the false imprisonment claim. Defendants' assertions crumble under scrutiny: probable cause under N.Y. Mental Hygiene Law § 9.39 demands "reasonable cause to believe" that the individual poses a "substantial risk of physical harm" to self or others, evidenced by recent threats or conduct. Plaintiff can clearly be heard stating over and over and over again that she is not suicidal and attempts to explain the circumstances surrounding her email. It should also be noted that the email, which is attached to the Amended Complaint, shows that is was actually sent to Plaintiff's landlord, and merely copied to CCHR and a representative from State Senator Hoylman's office (who Plaintiff had been seeking assistance from). None of the other recipients took the email as an imminent threat of self-harm, but understood the operative word "if" to mean Plaintiff was, in actual fact, simply demanding a resolution to the problem of her neighbor violating her disability rights. The police mocking the Plaintiff and laughing as they say that the psych ward doctor's would fix Plaintiff's problems was insulting and disrespectful to a disabled person dealing with actual physical pain caused by the abuse of her rights in her apartment, and demonstrated the unserious nature of their "assessment". The footage exposes officers brazenly stating they were "required" to transport Plaintiff for evaluation based solely on the initial report, with zero intent to perform an on-scene assessment or heed Plaintiff's vehement denials. This

reveals a blatant lack of independent probable cause determination at the scene, as officers summarily dismissed her detailed explanations and insisted on custody regardless, manifesting a municipal policy or custom of mandatory, rote transport without any meaningful evaluation.

Under Monell, municipal liability unequivocally attaches when a constitutional violation stems from a policy or custom, which does not require formal adoption but can be inferred from pervasive practices or direct officer testimony indicating a standard, entrenched procedure. Here, the officers 'recorded declarations that they were "required" to seize custody irrespective of Plaintiff's on-scene statements or observations provide direct, unassailable evidence of such a policy or custom, as squarely recognized in Torcivia v. Suffolk County, 17 F.4th 342, 355 (2d Cir. 2021), where an officer's testimony regarding a policy's existence supported a reasonable juror's conclusion that it existed.  Similarly, in Jones v. City of New York, 603 F. App'x 13, 15 (2d Cir. 2015) (summary order), the Second Circuit reversed summary judgment because an officer's testimony that "[t]hat is what we do," despite the absence of an official policy, sufficed to support a finding of custom or policy under Monell.  The BWC footage supplies precisely this type of testimonial evidence from the officers themselves, establishing an unconstitutional policy of automatic transport without discretion or evaluation, which directly caused the false imprisonment. This Court cannot hand down a decision that contradicts itself: the video irrefutably shows officers invoking a policy, and binding precedent confirms that such statements meet the Monell threshold.

Even if construed as a single incident, Monell liability attaches under the "single-incident" theory firmly articulated in City of Canton v. Harris, 489 U.S. 378, 390 n.10 (1989), where deliberate indifference manifests in rare but egregious circumstances when the need for more or different training or supervision is so patently obvious, and the inadequacy so likely to result in

constitutional violations, that policymakers must be deemed deliberately indifferent. The

Supreme Court in Connick v. Thompson, 563 U.S. 51, 63-64 (2011), reaffirmed this narrow yet

viable exception applies where consequences are "patently obvious," such as equipping officers

with firearms without training on deadly force limits. In the Second Circuit, this theory is not

only recognized but actively applied: district courts and the Circuit itself uphold it as viable, with

the deliberate indifference framework in cases like Vann v. City of New York, 72 F.3d 1040,

1049 (2d Cir. 1995), holding that liability may attach when the need for supervision is so

glaringly apparent that failure constitutes deliberate indifference. See also Amnesty Am. v.

Town of W. Hartford, 361 F.3d 113, 127 (2d Cir. 2004) (requiring proof of deliberate

indifference through failure to supervise or train, even in isolated incidents if risks are obvious).

The footage glaringly demonstrates such deliberate indifference: officers willfully ignored

Plaintiff's unequivocal denials and contextual clarifications, turning a blind eye to the evident

lack of substantial risk, aligning with a policy that exhibited gross neglect of Fourth Amendment

safeguards during mental health interventions, where the peril of unwarranted seizures is patently

obvious without on-scene evaluations.

The Court's prior ruling, which assumed Plaintiff's non-suicidality allegations as true yet

deemed the email sufficient for probable cause, is now untenable. The footage lays bare the full

context: Plaintiff clarified the email pertained to chronic pain from environmental triggers, not an

imminent threat, and explicitly denied current intent to harm. Her conditional EMT response

("Not right now because there's no fumes") underscores situational distress, not substantial

risk—yet officers dismissed it outright, failing to explore plausible innocence as mandated when

feasible. Cases like Barkai v. Mendez compel no blind acceptance of assurances, but here, fused

with zero evaluation and policy-mandated transport, probable cause evaporates. Ziegler v.

Aukerman confirms probable cause sans actual danger, but the footage reveals mindless policy enforcement, not objective reasonableness. The BWC shows that before Plaintiff resorted to saying "not right now.." she blanketly and clearly stated that she was not suicidal again and again. When that was not good enough she merely groped for whatever magic word would break through to reason and assumed the responders were operating on a theory of imminent threat so incorporated the words "right now." The responders then deliberately tried to twist that statement into probable cause. It was a vicious and unserious word game being played with incredibly serious consequences for the Plaintiff. Guan v. City of New York insists on reasonableness in mental health arrests, which the footage flatly refutes. The sought Amendment is far from futile—the footage generates triable issues that this Court must recognize.

**B. Excessive Force**

The SAC and footage decisively cure both Monell and injury deficiencies, rendering Defendants' opposition baseless. On Monell, the footage captures officers invoking a policy mandating handcuffing and transport without any accommodation for compliant individuals with disabilities, establishing an unconstitutional custom through direct officer testimony. See Torcivia v. Suffolk County, 17 F.4th 342, 355 (2d Cir. 2021) (officer testimony on policy existence supports Monell liability); Jones v. City of New York, 603 F. App'x 13, 15 (2d Cir. 2015) (reversing dismissal where officer's "[t]hat is what we do" indicated custom absent official policy). In the Second Circuit, such testimony empowers a reasonable juror to infer a policy or custom of deliberate indifference, especially where officers refused to inspect or adjust handcuffs amid screams of agony, evidencing a pervasive, reckless practice. A single incident suffices under the "single-incident" theory when it exposes deliberate indifference to an obvious risk, such as neglecting training on disability accommodations during restraints, where harms are

patently foreseeable. See City of Canton v. Harris, 489 U.S. 378, 390 n.10 (1989) (positing single-incident liability for obvious failures like untrained armed officers on deadly force); Connick v. Thompson, 563 U.S. 51, 63-64 (2011) (confining to "patently obvious" risks). Second Circuit precedents like Cash v. County of Erie, 654 F.3d 324, 334-35 (2d Cir. 2011), enforce deliberate indifference in failure-to-supervise scenarios where municipalities bear affirmative duties, imposing liability for overlooking obvious harms like custodial assaults. Here, the City's abject failure to train on accommodations during routine transports poses a glaring risk of excessive force, as the footage illustrates officers' callous disregard for Plaintiff's pre-existing nerve damage and spinal injuries and her torturous cries, satisfying the subjective recklessness for deliberate indifference.  The BWC footage clearly shows the EMT's were equally involved in these offenses.

On injury, the footage vividly documents Plaintiff writhing and screaming in "torture-level pain" from excessively tight handcuffs applied to her pre-existing nerve-damaged arm, with officers defiantly refusing initial checks or loosening despite her pleas. This transcends mere "temporary discomfort"; precedents like Burris v. Nassau County affirm scarring or nerve damage as qualifying injuries, and pre-existing conditions amplify excessiveness. Christian v. City of New York declares tight handcuffing inflicting harm beyond discomfort as excessive. The footage reveals gratuitous, spiteful application on a fully compliant Plaintiff, inflicting permanent emotional scars (recurring nightmares and anxiety toward police). Officers delayed adjustment throughout the extensive journey from Plaintiff's apartment door to the ambulance outside, with multiple stops along the way; the entire lengthy time ignoring entreaties to assess what they were doing, evincing malicious intent. The sought Amendment is not only viable but imperative.

**C. Defamation**

The BWC evidence powerfully bolsters the defamation claim by exposing CCHR's report as grossly misleading and derogatory. While the Court previously deemed the report non-false and non-derogatory, the footage demonstrates officers grasping for context concerning Plaintiff's email and the report from CCHR.  Conversations on the BWC reveal confusion and misrepresentation of the nature of CCHR's call to police.  This was because CCHR, instead of just claiming the call was coming from their agency, went the extra measure by identifying themselves as "the Law Enforcement Division."  This added unnecessary urgency and a sense of danger or criminality to the call and affected the behavior of the responders.  The heightened and aggressive response then gave the public appearance that Plaintiff was unstable or dangerous, even as she was not suicidal or a danger to anyone.  This establishes falsity.  The SAC amplifies the report's devastating impact, with footage indirectly linking to motive. Defamation per se attaches to suicide threat imputations of mental instability. Amendment is decidedly not futile.

**D. Intentional and Negligent Infliction of Emotional Distress**

The footage radically transforms the IIED claim: officers 'willful refusal to accommodate Plaintiff's disability, their stonewalling of her agonized screams, and the policy-fueled mistreatment shatter the "extreme and outrageous" barrier under Chanko. It depicts deliberate, abusive pain infliction. For NIED, the SAC alleges negligent accommodation failures distinct from intent; the footage corroborates both, showing negligent policy application heedless of harm. These claims must survive.

**E. Retaliation**

The footage ties directly by illustrating exaggerated enforcement action following Plaintiff's threat to sue CCHR, with the SAC detailing the timeline: CCHR's report trailed the April 28

7

threat, culminating in the May 6 call. The intervening email fails to sever causation if the report

was retaliatorily inflated.  The concept that the report was inflated is born out in the fact the

multiple other recipients of the same email, including the primary addressee, did not comprehend

the meaning of the message in the context CCHR attempted to portray it.  BWC footage also

verifies that Plaintiff's extended efforts to reason with the responders, and her fear of opening the

door without the security brace in place (due to prior assaults by police officers - enumerated in

the related complaint), annoyed the responders and seemed to give rise to much of the abuse

Plaintiff was subjected to after she found her efforts futile and agreed to cooperate.  BWC

reveals a level of frustration, on the part of the responders, being exacted on the Plaintiff by way

of retaliation for not complying more quickly to an abduction that never should have happened in

the first place.  Retaliation on the part of the responders is in addition to the claims against

CCHR.  Combined, a perfect storm of misrepresentation and overwrought emotional responses

from the Defendants led to no proper evaluation of the Plaintiff, the excessive force that was

used and the denial of any disability accommodation.  And Plaintiff should not have to explain to

the Court that punishing a disabled person in any way while in the act of defending her rights is

itself a violation of her rights and is considered retaliatory.  Therefore, Plaintiff's retaliation

claims are emphatically not futile.

## F. 42 U.S.C. §§ 1981, 1985(3), 1986, and 1988

The BWC does in fact unveils a conspiratorial agreement.  At the very least between Officer

Coghlan and the EMT in the ambulance; who quite literally are seen on the BWC secretly

signaling to each other and then deceptively conspiring to removing Plaintiff's bag from her

view so Coghlan could open it.  He then photographed Plaintiff's ID and benefit card and shared

Plaintiff's insurance information with the EMT against Plaintiff will or consent. Responders also

synchronized dismissal of Plaintiff's pleas and repeatedly backed each other up with policy invocations, whether accurate or not; implying collusion with CCHR/NYPD/FDNY to impose an unnecessary mandatory transport on behalf of the City. The SAC furnishes facts on a meeting of minds via the shared policy. §1981 applies amid race or disability animus; derivative claims ensue. Not futile. City makes no argument opposing the §1983 claims.

**G. Failure to Train and Negligent Supervision**

The footage solidifies a pattern through policy statements; even a single incident with deliberate indifference satisfies Monell, where the failure to train on mental health evaluations or disability accommodations betrays policymakers' conscious disregard for glaring risks. Under the single-incident theory from City of Canton v. Harris, 489 U.S. 378, 390 n.10 (1989), liability adheres without a pattern if the inadequacy is so obvious it equates to deliberate indifference, as reaffirmed in Connick v. Thompson, 563 U.S. 51, 63-64 (2011), for "patently obvious" consequences. In the Second Circuit, this remains viable where training/supervision needs are manifest, per Vann v. City of New York, 72 F.3d 1040, 1049 (2d Cir. 1995), and Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 127-28 (2d Cir. 2004) (failure to supervise/train evinces deliberate indifference even in isolated cases if risks are obvious). The SAC asserts the City's knowledge of analogous violations via prior complaints or patterns. The footage chronicles inadequate training on disabilities and mental health, rectifying deficiencies. Amendment is warranted and justice demands it.

## POINT II
### PLAINTIFF'S NEW FOURTH AMENDMENT CLAIM IS NOT FUTILE

Plaintiff's new claim alleging Officer Coghlan unlawfully searched her bag and photographed her identification and benefits cards without consent in the ambulance (SAC ¶¶ 188–191) is not

futile. The BWC footage reveals a blatant violation of her Fourth Amendment rights against unreasonable searches and seizures, as the search was conducted surreptitiously behind her back while she was handcuffed, compliant, and en route to a non-criminal mental health evaluation. Defendants 'justifications—reasonableness under totality of circumstances, special needs doctrine, lack of Monell policy, and qualified immunity—collapse under scrutiny, as the search lacked any legitimate governmental interest, exceeded administrative bounds, evidenced a municipal custom via officer conduct, and violated clearly established law. This claim must proceed, as it cures prior deficiencies and advances justice for a pro se plaintiff afforded special solicitude under Second Circuit standards.

**A. Officer Coghlan's Conduct Was Unreasonable Under the Totality of the Circumstances.**

Defendants 'reasonableness defense is meritless; the Fourth Amendment demands balancing privacy intrusions against governmental interests, and here, the scales tip decisively against the search. United States v. Knights, 534 U.S. 112, 118–19 (2001). The footage shows a non-consensual, warrantless rummaging of Plaintiff's bag for personal documents, photographing sensitive ID and benefits information, and relaying it to EMTs—all without exigency, safety concerns, or administrative necessity. This was no de minimis intrusion; it equated to a seizure of private data, akin to theft, as photographing constitutes a Fourth Amendment seizure by capturing exact copies that interfere with possessory interests. See United States v. Jefferson, 571 F. Supp. 2d 696, 704 (E.D. Va. 2008) (photographing documents seizes their contents); Bills v. Aseltine, 958 F.2d 697, 707 (6th Cir. 1992) (photography not a seizure only if no possessory interference, but here it enabled unauthorized use). Plaintiff, coherent and compliant after volunteering cooperation, posed no threat, rendering analogies to incoherent or dangerous suspects ridiculous.

**(1) Plaintiff's Privacy Interest Was Not Reduced by Her Custodial Status and Imminent Evaluation at the Hospital.**

Defendants 'diminished privacy claim is baseless; involuntary psychiatric transport under N.Y. Mental Hygiene Law § 9.41 does not strip Fourth Amendment protections equivalent to free citizens. Defendants' own citations apply to hospital staff and not police officers involved in a transport.  But even they limit the intrusion of Plaintiff's privacy.  No hospital staff has ever entered Plaintiff's bag for a search while inventorying her belongings. As Defendant's own citations state, in the hospital setting, Serna v. Goodno, 567 F.3d 944, 948 (8th Cir. 2009) (civilly committed retain rights analogous to pretrial detainees – i.e. diminished but not extinguished privacy); Brooks v. Hogan, 2013 WL 1294274, at *5 (N.D.N.Y. 2013) (patients… do not "check their constitutional rights at the door.')  And, that is AFTER the patient walk through the door… not while being transported by a third party.

Plaintiff committed no crime, was compliant, was not unstable or incoherent and had every right to expect the retention of her privacy rights while being transported to the hospital. Yet, she was treated as a criminal and her rights were violated on a number of levels and with a seemingly overt contempt.  This greatly added to the lasting trauma that has emotionally scarred the Plaintiff due to this and its related incidents.  Plaintiff takes her constitutional rights as seriously as any person living in a free society should.

For reasons stated above, Defendants' hospital inventory analogies fail; People v. Rosario, 151 Misc.2d 1007, 1009 (N.Y. Sup. Ct. 1991) and N.Y. Mental Hygiene Law § 33.07 authorize facility custody of belongings upon admission, not preemptive police searches en route.  Aiken v. Nixon, 236 F. Supp. 2d 211, 228–29 (N.D.N.Y. 2002) applied to patient belongings at facilities, not patient's bags during non-exigent transport.  Plaintiff did not consent to insurance

billing; her surreptitious data extraction led to unauthorized charges, reducing her unrelated lawsuit settlement, via actively accumulating Medicare liens— a tangible privacy harm.

**(2) The Government's Interest in Identification Was Not Significant.**

No substantial interest justified this search; Plaintiff was already identified, handcuffed, compliant, and in custody—Defendants' "misidentification" fear is absurd, as officers had already asked Plaintiff to confirm her identity. Had she not, the officers would have had no probable cause to take her into custody based on their own reasoning – whether that reasoning was sound or not. Illinois v. Lafayette, 462 U.S. 640, 646 (1983) (inventory searches incident to criminal booking) is inapposite; this was civil transport, not arrest, with medical rather than investigative purpose.  Matter of Bernard G., 247 A.D.2d 91 (1st Dep't 1998) and People v. Yaniak, 190 Misc.2d 84 (2001) involved non-criminal safety searches, not bag intrusions for ID. People v. Johnson, 74 Misc.3d 344 (2021) upheld pat-downs for safety, not bag searches; here, no physical contact or danger existed, making the "a fortiori" inference specious.  Ex-NYPD friend of Plaintiff confirmed the impropriety of the search as he witnessed it on the video; Plaintiff's unnecessary handcuffing post-cooperation justified her non-consent to further intrusions.

**(3) The Intrusion Was Not De Minimis.**

Far from de minimis, the search seized belongings by photographing, enabling unauthorized use—equivalent to theft, as Plaintiff has no assurance photos were deleted. BWC (McLaughlin Decl., Exhibit A, at 16:29:06–16:30:07) shows scope, but brevity doesn't excuse unlawfulness.

**B. The Special Needs Doctrine Does Not Justify the Search.**

Special needs fail; this was no "beyond law enforcement" exigency. Nicholas v. Goord, 430 F.3d

652, 658 (2d Cir. 2005).   Aiken v. Nixon applied to facility safety; Torcivia v. Suffolk County,

17 F.4th 342 (2d Cir. 2021) to firearms seizure; McCabe v. Life-Line Ambulance Service, Inc.,

77 F.3d 540 (1st Cir. 1996) to commitment;  and Johnson to pat-downs.  Rosario and MHL §

33.07 concern admission, not transport; the ambulance isn't a "hospital"—the search was

pretextual, grasping at straws. Plaintiff was coherent, not incoherent; And as such her privacy

interest remain undiminished under the Special Needs Doctrine.

**C. A Monell Policy Is Alleged.**

The SAC alleges a municipal custom of warrantless searches during psychiatric transports,

evidenced by Coghlan's conduct—ironic after Defendants argue policies yet deny Monell. A

single incident suffices with deliberate indifference. Connick v. Thompson, 563 U.S. 51, 61

(2011); see prior expansions in Point I above.

**D. Relevant Authority Confirms This Claim's Viability and Qualified Immunity is Inapplicable.**

Defendants' claim that there is an absence of relevant authorities pertaining to the officer

photographing Plaintiff's documents is just another way of admitting that the behavior is so

egregious and so aberrant that no other officer has dared to so brazenly engage in it and give rise

to a suit.  But authority abounds against similar searches; and reasonableness is not reinforced—

it's refuted.  Johnson, Rosario, Aiken, Torcivia involve distinct intrusions. United States v.

Chadwick, 433 U.S. 1 (1977) (warrantless container search post-arrest invalid) is apt: criminal

context, but principle applies—non-exigent bag search violates privacy.  Any claims of  qualified

immunity are premature; facts are disputed (e.g., consent, necessity), requiring further discovery.

13

Oliver Schools, Inc. v. Foley, 930 F.2d 248, 253 (2d Cir. 1991); Hirsch v. Desmond, 2013 WL 494614, at *4 (E.D.N.Y. 2013). It is clearly established that warrantless non-exigent searches in mental health contexts violate rights. See Sutterfield v. City of Milwaukee, 751 F.3d 542 (7th Cir. 2014) (exigent circumstances required for entry/seizure in mental health crises).

Pro se status demands solicitude; This Court has repeatedly erred in demanding excessive evidence/details and case citations to establish Plaintiff's claims — an inversion of doctrine. Erickson v. Pardus, 551 U.S. 89 (2007); Haines v. Kerner, 404 U.S. 519 (1972). This has forced Plaintiff to enumerate humiliating details in publicly viewable documents and forced her to submits photographs, emails and medical documents which would never be asked of a Plaintiff represented by counsel at this stage of the proceedings. This court has repeatedly demanded legal prowess from this Plaintiff beyond her abilities and when she has lacked the full ability to counter misrepresented citations put forth by the Defense, as they were in the Opposition, the court has erroneously adopted specious arguments in the Defendants' favor. Excessive standards demanded of the Plaintiff have led to a series of over-length briefs, including this one, and not allowed a single claim to stand without meeting summary judgment standards. This is despite the fact that Plaintiff has not yet been given the benefit of any discovery beyond the BWC footage.

## POINT III
## ADDING FDNY EMTS AS DEFENDANTS IS NOT FUTILE AND IS PROPER

Plaintiff's motion to add FDNY EMTs as defendants is not futile and must be granted. The BWC footage confirms EMTs 'direct involvement in violating Plaintiff's disability rights by forcing her into an unstable chair conveyance despite her explicit notifications of back and arm disabilities, causing excruciating pain as handcuffs dug into her injured back and wrist. This

constitutes a clear ADA Title II failure-to-accommodate claim, as EMTs refused reasonable

modifications to transport methods, discriminating on the basis of disability. The Court's prior

denials of EMT identification (ECF Nos. 62, 63, 68) are moot with footage evidence; the

addition bolsters the ADA claim. Pro se solicitude demands approval. Erickson v. Pardus, 551

U.S. 89 (2007); Haines v. Kerner, 404 U.S. 519 (1972).

For dismissed claims—excessive force, IIED, NIED, false imprisonment, defamation, retaliation,

conspiracy—adding EMTs revives them via footage showing joint liability with police;

deficiencies cured as in Point I.

For the ADA claim, Defendants misframe it as challenging "substance of services," but it's a

classic failure to accommodate: EMTs ignored Plaintiff's disability notifications and denied a

stretcher—a reasonable modification to policies/practices necessary for equal access to transport

services. Tardif v. City of New York, 991 F.3d 394, 405 (2d Cir. 2021) (ADA actionable for

denial of accommodations, not mere treatment quality); Greene v. City of New York, 773 F.

Supp. 3d 94 (S.D.N.Y. 2025) (distinguishes discriminatory denial from treatment

dissatisfaction—here, denial of accessible method due to disability).  This is not clinical

judgment exempt from ADA; transport method selection must accommodate known disabilities.

28 C.F.R. § 35.130(b)(7) (require modifications unless fundamental alteration); West v. DeKalb

County (11th Cir. 2025) (failure to accommodate in emergency response violates Title II if no

specific request but constructive notice suffices).  Ellison v. Hobbs, 786 F. App'x 861 (11th Cir.

2019) and Walker v. Caldwell, 603 F. Supp. 3d 449 (N.D. Miss. 2022) involve capacity

assessments, not transport accommodations; irrelevant here.

"Direct threat" theory is totally inapplicable; Plaintiff posed no risk—claim is inadequate

accommodation, not exclusion. 42 U.S.C. § 12182(b)(3).  SAC alleges discriminatory animus:

EMTs chose chair despite screams and notifications, treating her differently than non-disabled (who wouldn't need stretcher). This shows unreasonable failure, not mere discretion. 49 Am. Jur. Proof of Facts 3d 1 § 1; DOJ Guidance: ADA applies to emergency medical services, requiring accommodations. U.S. Dep't of Justice, Commonly Asked Questions About the ADA and Law Enforcement (2020).  Adding EMTs is viable—footage proves involvement; futility baseless.

**POINT IV**
**PLAINTIFF'S MOTION IS NOT AN IMPROPER SERIAL MOTION FOR RECONSIDERATION**

Plaintiff's motion is proper and warranted under the circumstances, as the newly obtained BWC footage constitutes compelling new evidence that directly supports reinstatement of dismissed claims and disclosure of EMT identities. As a pro se plaintiff, entitled to special solicitude, the Court must liberally construe this motion to achieve substantial justice, rather than dismissing it on technical grounds. Haines v. Kerner, 404 U.S. 519, 520 (1972) (pro se complaints held to "less stringent standards than formal pleadings drafted by lawyers"); Erickson v. Pardus, 551 U.S. 89, 94 (2007) (pro se documents interpreted "to raise the strongest arguments that they suggest"). The Court's repeated demands for evidence—contrary to the standard where pro se allegations are accepted as true at pleading stage—have unfairly burdened Plaintiff, inverting the liberal construction doctrine. See Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007) (pro se pleadings accepted as true unless inherently incredible). Justice requires reassessment, as many times as needed, to prevent manifest injustice. Fed. R. Civ. P. 60(b)(2) (relief for newly discovered evidence that could not have been discovered earlier with due diligence); 60(b)(6) (any other reason justifying relief).

**A. Plaintiff Has Identified Defamatory Statements, and the Motion Properly Seeks Relief Based on New Evidence.**

Defendants misconstrue the motion; it is not a serial reconsideration under Local Civil Rule 6.3 but a proper request to vacate (ECF Nos. 60, 62, 63) and amend based on newly discovered BWC footage, unavailable earlier despite diligent efforts. This footage is not merely corroborative but transformative evidence that the Court could not have "overlooked"—it reveals facts undermining prior dismissals, such as policy statements supporting Monell liability and EMT involvement in accommodations failures. Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995) (reconsideration for overlooked matters, but new evidence warrants Rule 60 relief).   Defendants 'deflection to defamation is puzzling and irrelevant here, as the core issue is new evidence justifying revival. Serial requests are proper when, as here, pro se diligence uncovers evidence progressively; denial would perpetuate abuse and deny due process. See Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (leave to amend freely granted, especially pro se, to avoid injustice).   That said, Plaintiff has repeatedly identified defamatory statements (e.g., CCHR's misleading suicide threat report from their "Law Enforcement Division" and the use that title to imply false authority which confused the responders and deceptively implied criminality and instability on the part of the Plaintiff; the BWC footage and the overheard conversations of the responders bolsters plaintiff's assertions  on that subject and show that her contextual non-suicidality was ignored while undue aggression was employed to force Plaintiff to submit to the inappropriate actions instigated by CCHR's misrepresentations. The motion must proceed.

**POINT V**
**OFFICERS' BODY WORN CAMERA FOOTAGE IS PROPERLY BEFORE THE**
**COURT, BUT DOES NOT JUSTIFY DENYING AMENDMENT AT THIS STAGE**

Plaintiff has no objection to the submission of Officer Coghlan's complete, unedited BWC

footage (McLaughlin Decl., Exhibit A) and would have provided it herself had the pro se desk

provided adequate guidance; instead, she was informed only still photos could be uploaded,

which she did in good faith. ECF No. 79-1. As a pro se litigant, Plaintiff is entitled to special

solicitude, and the Court must not penalize her for procedural hurdles or limited resources.

Haines v. Kerner, 404 U.S. 519, 520 (1972); Erickson v. Pardus, 551 U.S. 89, 94 (2007) (pro se

filings liberally construed to raise strongest arguments). The footage supports amendment by

revealing new claims (e.g., unlawful photographing of ID in ambulance) and bolstering

dismissed ones, but Defendants' attempt to leverage it for premature dismissal ignores that this is

the pleading stage, not summary judgment. Fed. R. Civ. P. 12(b)(6) (allegations accepted as

true); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Plaintiff takes offense at the ongoing burden

to produce "strong evidence" merely to survive dismissal, inverting pro se protections where

allegations suffice. Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007) (pro se pleadings accepted

as true unless incredible).

**A. The Footage Is Integral to the Proposed SAC, But Supports Amendment.**

While the footage is integral under Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir.

2002), and Pearson v. Gesner, 125 F.4th 400 (2d Cir. 2024), as the SAC relies on it for new

allegations (ECF No. 81 ¶ 6), it strengthens Plaintiff's case by confirming violations (e.g., tight

handcuffs, ignored pain, policy statements). Hershey v. Goldstein, 938 F. Supp. 2d 491, 498–99

(S.D.N.Y. 2013) and Houghtaling v. Downes, 623 F. Supp. 3d 145, 152 (W.D.N.Y. 2022) allow

consideration of referenced videos, but here, it creates triable issues favoring amendment, not

futility. Leave to amend is freely granted absent futility or prejudice. Fed. R. Civ. P. 15(a)(2);

Foman v. Davis, 371 U.S. 178, 182 (1962).

**B. Plaintiff Has Not Selectively Invoked the Footage.**

Plaintiff did not "cherry-pick" to mislead; stills were submitted due to pro se limitations, and the

full footage aligns with her narrative, revealing even more supportive details (e.g., screams of

pain, refusal to accommodate). Malin v. XL Capital Ltd., 499 F. Supp. 2d 117, 129 (D. Conn.

2007) and Cortec Industries, Inc. v. Sum Holding L.P., 949 F.2d 42, 47–48 (2d Cir. 1991)

address selective quoting to evade dismissal, but here, footage corroborates claims, and pro se

status precludes bad-faith inference. Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir.

2008) (amend freely for pro se to avoid injustice). Five other BWC videos (from additional

officers/EMTs) contain further conversations and details not in Coghlan's, underscoring need for

full discovery.

**C. The Court Should Not Exercise Discretion to Apply Summary Judgment Standard.**

Applying summary judgment to deny amendment is premature; the record is undeveloped, with

outstanding facts (e.g., fate of ID photos, unauthorized billing evidence, impacts on Plaintiff's

settlement). Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001) allows it only

when no triable issues and no further discovery needed—criteria unmet here. Chapman v. N.Y.

State Div. for Youth, 2010 WL 11565152, at *5 (N.D.N.Y. 2010) factors weigh against:

discovery essential (e.g., billing records, photo disposition); Plaintiff objects to summary

judgment treatment; dismissal assessment not futile, as claims raise triable issues. This is

amendment stage; full footage supports, not defeats, viability. Denying amendment would

perpetuate unfair burdens on pro se Plaintiff.

**CONCLUSION**

For these reasons, the Court should grant Plaintiff's motion for leave to file the Second Amended

Complaint, including all reasserted and new claims, and provide such further relief as justice

requires.

Dated New York, New York
    March 10, 2026

                                      Respectfully Submitted,

                                      Kelly MacNeal
                                      507 W 28th St, Apt 26D
                                      New York, NY 10001
                                      212-581-3223
                                      *Pro se Plaintiff*

Cc:  **VIA ECF**
John McLaughlin - Attorney for Defendant City of New York
*Assistant Corporation Counsel*
 New York City Law Department
100 Church Street
New York, NY 10007
(212) 356-2670
jmclaugh@law.nyc.gov

Bianca C. Isaias
New York City Law Department
100 Church Street, 20th Floor
New York, NY 10007
(212) 356-4050
*bisaias@law.nyc.gov*
*Attorney for Defendant City of New York - Assistant Corporation Counsel*

Doris F. Bernhardt - Attorney for Defendant City of New York
*Assistant Corporation Counsel*
100 Church Street
New York, NY 10007
(212) 356-2296