UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
KELLY MACNEAL,

                              Plaintiff,                                          **ORDER**

                  -against-                                            **23-CV-5890 (LGS) (JW)**

CITY OF NEW YORK et al.,

                              Defendants.
------------------------------------------------------------------X
**JENNIFER E. WILLIS, United States Magistrate Judge:**

On January 20, 2026, Plaintiff filed a motion for leave to file a Second Amended Complaint ("SAC") along with two exhibits.  Dkt. No. 79.  In support of the motion, Plaintiff filed a memorandum of law and an Affidavit.  Dkt. Nos. 80-81.  On February 24, 2026, Defendants[1] filed their opposition as well as a Declaration of John McLaughlin and an exhibit.  Dkt. No. 85.  On March 10, 2026, Plaintiff filed her reply.  Dkt. No. 88.  For the reasons stated below, the motion for leave to amend is **GRANTED** as to the unlawful search and excessive force claims and **DENIED** as to all other claims.

## BACKGROUND

### A. Procedural History

Plaintiff filed the Complaint in this case on July 7, 2023.  Dkt. No. 1.  The Complaint included claims against the New York City Commission on Human Rights ("CCHR") and two of its employees under Title II of the Civil Rights Act of 1964, 42

---

[1] The motion for leave to amend addresses claims related to City Defendants. Accordingly, in this Order, "Defendants" refers to City Defendants only.

U.S.C. §§ 1981, 1983, 1985, the American with Disabilities Act ("ADA"), and the New York State and City Human Rights Laws.  Id.  Plaintiff also included claims for conspiracy to tamper with a witness, false imprisonment, kidnapping, retaliation, and malicious prosecution and cited to 18 U.S.C. § 242 of the federal criminal code. Id.

On February 15, 2024, Judge Schofield ordered Plaintiff to file a First Amended Complaint ("FAC") to replace the CCHR with the City of New York as a Defendant and remove any claims based on criminal law except for the false imprisonment claim.  Dkt. No. 28.  On March 15, 2024, Plaintiff filed the FAC.  Dkt. No. 29.  The FAC included claims against John Does 1-8 of the New York City Police Department ("NYPD") and Jane and John Doe of the New York City Fire Department Bureau of Emergency Medical Services ("NYFD EMS").

On April 5, 2024, Defendants filed a Motion to Dismiss the FAC.  Dkt. No. 32. Plaintiff filed an opposition on April 26, 2024, and Defendants replied on May 9, 2024. Dkt. Nos. 35-36.  On February 27, 2025, Judge Schofield granted Defendants' Motion to Dismiss as to all claims except the racial discrimination claim under 42 U.S.C. § 1983 and the NYCHRL claim for racial discrimination against CCHR for failure to file a complaint for Plaintiff.  Dkt. No. 41.

2

On March 13, 2025, Plaintiff sought reconsideration of Judge Schofield's Order on the Motion to Dismiss.[2] Dkt. No. 45. Among other things, Plaintiff argued that the FAC included a claim for failure to accommodate under the ADA against unidentified NYPD officers. Though Plaintiff failed to assert a cause of action for a failure to accommodate claim, Judge Schofield granted Plaintiff's motion for reconsideration as to that claim only and read it into the FAC. Dkt. No. 58 at 6. Following Judge Schofield's Order, the remaining claims were (1) a Section 1983 claim against the City of New York for racial discrimination; (2) a claim under the NYCHRL for racial discrimination, and (3) a claim under the ADA against unidentified NYPD officers regarding their failure to accommodate Plaintiff's injuries when detaining her. Id. In the Order, Judge Schofield directed Defendants to make efforts to identify the NYPD officers and supply service addresses to Plaintiff. Id.

On August 4, 2025, Plaintiff filed a letter motion to compel Defendants to provide the identities and service addresses for FDNY EMS personnel in addition to the NYPD officers. Dkt. No. 61. Plaintiff also moved to compel body worn camera video footage ("BWV") of the NYPD officers who detained Plaintiff. Id. On August 13, 2025, this Court denied Plaintiff's motion to compel stating, "Plaintiff does not establish the EMTs relevance to the ADA claim, as she does not allege that EMTs were involved in the 'shoving of her into an unstable portable chair.'" Dkt. No. 62 at

_____

[2] Although the motion is titled Order to Show Cause Reconsideration of Decision on Motion to Dismiss, Judge Schofield construed it as a motion to reconsider. Dkt. No. 45.

2. However, the Court granted Plaintiff's motion to compel BWV from the NYPD officers involved. Id.

On August 29, 2025, in related case 24-CV-6017, Plaintiff filed a motion to reconsider the Court's order denying her motion to compel the identities and service addresses of the EMS personnel. MacNeal v. State of New York et al., No. 24 Civ. 6017 (LGS)(JW), Dkt. No. 114. On September 8, 2025, this Court denied Plaintiff's motion for reconsideration because "Plaintiff's only allegation as to EMTs in her amended complaint was that they 'refused to be dissuaded from forcing Plaintiff to be taken for a psychological evaluation.'" Dkt. No. 63 at 2.

## B. Body Worn Video Footage

On September 29, 2025, Plaintiff received NYPD Officer Coghlan's BWV from the City that captured the events of May 6, 2022, when Plaintiff was detained and transported to the hospital for a mental health examination. Dkt. No. 81 at ¶ 2; Dkt. No. 79-2 ("Ex. B") at ¶ 147.

Following a 911 call reporting that Plaintiff made a suicide threat, Coghlan and one other NYPD officer entered Plaintiff's apartment building and spoke to an employee, stating they were there for an "emotional disturbance." Coghlan BWV at 1:30-2:00. Coghlan and the other officer knocked on Plaintiff's apartment door and called her on the phone. Id. at 5:15. Plaintiff answered the phone and the NYPD officers told her that someone had called 911 stating she was not feeling well and that they needed to speak with her for two minutes. Plaintiff responded that she was not

suicidal and would not leave her apartment but agreed to come to the door.  Id. at 5:35-7:08.

While speaking to the NYPD officers and EMS personnel through the door of her apartment, Plaintiff confirmed that she sent and email stating she was going to kill herself if her landlord doesn't stop the pain she's experiencing.  Id. at 8:05-9:39. She also stated that she did not want to kill herself "right now," because there are no fumes coming into her apartment at that time.  Id. at 10:40-11:03.

After Plaintiff's statements to the NYPD officers and EMS personnel clarifying her intentions, Coghlan stated "we're going to have to take you to the hospital" and an EMS worker explained "you just said not right now and you said in your email 'if this doesn't stop I will kill myself to stop the pain.'"  Id. at 11:08-13:28.  Plaintiff refused to leave her apartment and instead proceeded to call an unknown individual, who stated he did not call 911, and called an attorney.  Id.at 18:45-27:00.  Plaintiff repeatedly cried out that she is not seriously trying to kill herself and that she was trying to make a point.  Id. at 28:30.  In response, an EMS worker stated that they don't take suicidal statements as jokes.  Id. at 28:30-40.

Eventually Plaintiff agreed to open the apartment door and voluntarily go to the hospital.  Id. at 48:50.  Immediately upon stepping into the hallway, NYPD officers Coghlan, Mickovic, McGovern, and Darnaud handcuffed Plaintiff.  Id.; see also Ex. B. at ¶ 160.  Plaintiff screamed that the handcuffs hurt her, and EMS personnel brought a transport wheelchair for her to sit in.  Coghlan BWV at 49:52-50:05.  Plaintiff continued to yell that she has a broken back and was in pain.  Id. at

50:19-50:25.  An EMS worker informed Plaintiff that they would transfer her to a stretcher and handcuff her in the front instead of the back.  Id. at 52:47-53:05. Plaintiff was then brought outside to the ambulance, moved onto a stretcher with one hand cuffed to the side bar, and placed into the ambulance with Coghlan and an EMS worker.  Id. at 57:00-1:00:55.

In the ambulance Coghlan asked Plaintiff for her last name and date of birth, which she refused to provide.  Id. at 1:08:54-1:09:10.  The EMS worker grabbed Plaintiff's canvas bag and handed it to Coghlan who proceeded to go inside the bag and remove Plaintiff's wallet.  Id. at 1:14:45-1:15:10.  Coghlan photographed Plaintiff's identification card and benefits card and showed a copy to the EMS worker, who was filling out paperwork on a laptop in the ambulance.  Id. at 1:15:30-1:19:35.

## C. Motion for Leave to Amend

In light of the BWV Plaintiff received in discovery, she now moves for leave to amend the FAC to add new claims, reassert claims that Judge Schofield dismissed, and add the EMS personnel as Defendants.  Specifically, Plaintiff seeks to add "1) claims against Officer Coghlan, alleging a previously unknown unconstitutional search," and to reassert claims of "2) excessive force, 3) failure to train and 4) intentional and negligent infliction of emotional distress and 5) all other claims concerning the NYPD and FDNY-EMT's; which were improperly dismissed in the absence of Plaintiff's access to new evidence and the Court's failure to accept Plaintiff's allegations as factual during the initial motion to dismiss proceeding."  Pl.'s Mem. at 1-2.  In addition, Plaintiff "seeks to 6) add the 3 FDNY-EMT's as Defendants

to the surviving claim of 'failure-to-accommodate' under ADA Title II; and also add these FDNY-EMT's as Defendants to all other claims now reasserted against the NYPD officers, with exception to the unlawful search claim." Id. at 2.  Plaintiff does not seek to amend any claims related to the CCHR Defendants. Id.

Defendants oppose the motion for leave to amend the FAC because the new Fourth Amendment claim is futile, the reasserted claims are futile, and the motion is "an improper serial motion for reconsideration."  Dkt. No. 85.

## LEGAL STANDARD

### A.  Leave to Amend

Courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2).  However, courts "retain the discretion to deny [] leave in order to thwart tactics that are dilatory, unfairly prejudicial, or otherwise abusive.'" Littlejohn v. Artuz, 271 F.3d 360, 363 (2d Cir. 2001); see also Foman v. Davis, 371 U.S. 178, 182 (1962) (noting as reasons to deny leave, "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment").  "[A]mendment is favored where it would allow the merits of a claim to be fully adjudicated." Stonewell Corp. v. Conestoga Title Ins. Co., No. 04 Civ. 9867 (KMW) (GWG), 2010 WL 647531, at *2 (S.D.N.Y. Feb. 18, 2010) (citing Morin v. Trupin, Nos. 88 Civ. 5743 (RWS), 90 Civ. 3475 (RWS), 835 F. Supp. 126, 129 (S.D.N.Y. 1993)).  However, "[w]here it appears that granting leave to amend is unlikely to be productive… it is not an abuse of

discretion to deny leave to amend." Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993).

## DISCUSSION

Plaintiff's motion seeks three types of amendments to the FAC. First, Plaintiff seeks to add a new claim of an unlawful search under the Fourth Amendment. Second, Plaintiff seeks to reassert several claims that were dismissed by Judge Schofield. Third, Plaintiff seeks to add three NYFD EMS workers as Defendants in the failure to accommodate claim under the ADA and all other claims she seeks to reassert. The Court will address each in turn.

### A. Body Worn Video Footage

Plaintiff attached several screenshots of Coghlan's BWV to her motion to amend the FAC. Dkt. No. 79-1. Defendants attached the entirety of Coghlan's BWV to their Opposition. Dkt. No. 84-A. This Court will consider both Plaintiff's screenshots and the full BWV footage because they are both integral to the Complaint. Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002). The proposed SAC "relies heavily on upon its terms and effect," of the BWV footage, thereby rendering both the screenshots and full footage "integral to the complaint." Id. (cleaned up).

### B. Fourth Amendment Claim

Defendants concede that the Fourth Amendment unlawful search claim Plaintiff seeks to include in the SAC is based on information revealed in the BWV

and therefore Plaintiff could not have known about it prior. Opp'n at 7. Nevertheless, Defendants argue Plaintiff should be prohibited from amending to add the claim because it's futile for three reasons (1) the search was reasonable, (2) the special needs doctrine justifies the search, and (3) the SAC fails to plead sufficient facts for a Monell claim. Id.

### 1. Reasonableness of the Search

The Fourth Amendment protects individuals against unreasonable searches and seizures by law enforcement, including where the seizure is pursuant to mental health laws. Myers v. Patterson, 819 F.3d 625, 632 (2d Cir. 2016). A search under the Fourth Amendment occurs when an "individual manifests a subjective expectation of privacy in a searched object, and society is willing to recognize that expectation as reasonable." Johnson v. City of Newburgh, No. 22 Civ. 4450 (VB), 690 F.Supp.3d 224, 235 (S.D.N.Y. Aug. 29, 2023) (cleaned up) (citing Kyllo v. United States, 533 U.S. 27, 27-28 (2001). Warrantless searches are "per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." Johnson, 690 F.Supp.3d at 235 (emphasis in original) (cleaned up).

While it is widely recognized that there is a reasonable expectation of privacy in a bag that conceals the contents from plain view, New Jersey v. T.L.O., 469 U.S. 325, 337 (1985), the Supreme Court has affirmed the reasonableness of certain administrative procedures, including identification, following arrest. Maryland v. King, 569 U.S. 435, 461 (2013) ("[T]here can be little reason to question 'the legitimate

interest of the government in knowing for an absolute certainty the identity of the person arrested…'").

Defendants argue that because the government had a substantial interest in identifying Plaintiff, the purpose of the search was administrative, and the intrusion was *de minimis*, the search was reasonable and allowing the amendment would be futile. Opp'n at 15-17. Defendants cite several New York state cases in furtherance of their position. See Matter of Bernard G., 247 A.D.2d 91, 679 N.Y.S.2d 104 (1st Dep't 1998) (permitting an officer to search an abandoned shopping bag); People v. Yaniak, 190 Misc.2d 84, 738 N.Y.S.2d 492 (Yates County. Ct. 2001) (finding the delayed search of a wallet and clothing was lawful incident to arrest); People v. Johnson, 74 Misc.3d 344, 348, 159 N.Y.S.3d 816 (Orange County. Ct. 2021) (permitting a pat down for weapons in a noncriminal custodial medical transport). However, none of the cases cited by Defendants are binding or directly on point such that Plaintiff's claim would be futile based on the reasonableness of the search.

Because it is clear to this Court after reviewing the BWV that Coghlan searched Plaintiff's opaque, canvas bag without a warrant or consent, while she was detained civilly, the question becomes whether an exception to the warrant requirement renders the amendment futile.

### 2. Special Needs Doctrine

The special needs exception to the warrant requirement applies when "special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable." Torcivia v. Suffolk County, New York, 17 F.4th

342, 356 (2d Cir. 2021) (citing T.L.O., 469 U.S. at 351). If the Court determines the special needs doctrine applies, a reasonableness inquiry follows. Palladino v. City of New York, Nos. 07 CV 9246(GBD), 07 CV 9337(GBD), 07 CV 10359(GBD), 870 F.Supp.2d 350, 355 (S.D.N.Y. June 28, 2012).

Defendants cite Aiken v. Nixon to argue a special needs exception applies. 236 F.Supp.2d 211, 231, (N.D.N.Y. Sept. 30, 2002), *aff'd*, 80 Fed.Appx. 146 (2d Cir. 2003). In Aiken the Court held that a policy of strip searches at a psychiatric facility "appears to be a special needs case," and evaluated the reasonableness of the policy, ultimately determining that the search of Plaintiff could establish a constitutional violation, but that the defendants were protected by qualified immunity. Id. at 235. However, Defendants acknowledge that no court has addressed the exact issue at hand. Opp'n at 12. Because of the absence of directly on point authority, the Court does not find Plaintiff's unlawful search claim against Coghlan futile.

Finally, the Court declines to address whether qualified immunity will ultimately bar this claim because it is "not a valid basis for denying leave to amend the complaint…for such immunity is an affirmative defense that the defendants have the burden of raising in their answer and establishing at trial or on a motion for summary judgment." Oliver Schools, Inc. v. Foley, 930 F.2d 248, 253 (2d Cir. 1991) (citation omitted).

As such, Plaintiff's motion to add a Section 1983 claim of unlawful search against Coghlan is **GRANTED**.

11

### 3. Monell Policy

To state a Section 1983 claim against a municipality, a plaintiff must adequately plead "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Torraco v. Port Auth. of New York & New Jersey, 615 F.3d 129, 140 (2d Cir. 2010); see also Jones v. Town of E. Haven, 691 F.3d 72, 80 (2d Cir. 2012) ("a municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality.") (citations omitted).

Plaintiff does not include facts in the proposed SAC to support a Section 1983 claim based on unlawful searches of individuals detained pursuant to a mental health examination. See Ex. B at ¶¶ 188-191. Rather, Plaintiff pleads only that Coghlan asked for Plaintiff's bag, searched it, removed the wallet, removed the ID and benefits card and photographed them. Id. Given the absence of an official policy or custom both in the BWV footage and the proposed SAC, Plaintiff's motion to add a Section 1983 claim for unlawful search against the City is **DENIED**.

### C. Reassertion of Claims Previously Dismissed

Plaintiff seeks to reassert claims for false imprisonment, excessive force, defamation, IIED, NIED, retaliation, failure to train, and conspiracy, all of which Judge Schofield previously dismissed, based on the newly available BWV. The Court will address each in turn.

### 1. False Imprisonment

The false imprisonment claim was dismissed by Judge Schofield "because probable cause existed to subject Plaintiff to a psychological evaluation." Dkt. No. 41 at 15. In dismissing the false imprisonment claim, Judge Schofield considered that Plaintiff tried to reason with the police and even called her attorney who verified that she was not suicidal. FAC ¶¶ 132-34. Despite those allegations, the Court found that probable cause existed based on Plaintiff's email threatening suicide. Dkt. No. 41 at 15.

The BWV footage confirms that Plaintiff tried to reason with the police. Coghlan BWV at 5:35-48:00. It also confirms that Plaintiff sent the email threatening suicide. Id. at 8:05-9:39. During the encounter with the NYPD officers and NYFD EMS personnel, Plaintiff was asked whether she "want[s] to hurt herself right now?" She responded, "not right now because there's no fumes coming into my apartment at this moment." 10:40-10:55. Based on the email threatening suicide, Plaintiff's statements that she did not want to hurt herself in the moment because there were no fumes in her apartment at that time, along with other circumstances observed by the NYPD and EMS, Plaintiff was detained and brought to the hospital for a mental health evaluation. Because probable cause is a complete defense to a false arrest and imprisonment claim, Washington v. Napolitano, 29 F.4th 93, 104 (2d Cir. 2022), and the BWV does not negate the factual assertions Judge Schofield relied on when dismissing the unlawful imprisonment claim in the FAC, Plaintiff's motion for leave to reassert the false impressment claim is **DENIED**.

13

### 2. Excessive Force

Judge Schofield dismissed the excessive force claims in the FAC for two reasons. First, the Section 1983 claim based on excessive force was dismissed because the FAC failed to "plead a municipal policy of employing excessive force against people reported for suicidal risks." Dkt. No. 41 at 16. Second, to the extent that Plaintiff intended to plead an excessive force claim under state law it was dismissed because the "tight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort," with the most common injuries found to satisfy the requirement being scarring and nerve damage, and the FAC did "not allege a sufficiently grave permanent injury." Id. (citing Burris v. Nassau County Dist. Att'y, No. 14 Civ. 5540, 2022 WL 889027, at *4 (E.D.N.Y. Mar. 25, 2022).

Defendants argue that the proposed SAC fails to cure the deficiencies because "the SAC still alleges only a single incident." Opp'n at 4. However, Plaintiff does allege that "she was told that the handcuffs were required by policy and so they would not be removed or adjusted." Ex. B at ¶ 175. The question for the Court is whether allowing the amendment would be futile because Plaintiff failed to plead a sufficient injury.

The injuries alleged need not be "severe or permanent" but must be more than "de minimis." Usavage v. Port Authority, No. 10 Civ. 8219 (JPO), 932 F.Supp.2d 575, 592 (S.D.N.Y. Mar. 26, 2013). Courts in this District have denied motions to dismiss based on allegations of wrist pain, bruising, and swelling. Harvey v. Corneal, No. 24 Civ. 7380 (JAV), 2025 WL 2345879, at *6 (S.D.N.Y. Aug. 13, 2025) (citing Ketcham v.

14

City of Mount Vernon, 992 F.3d 144, 150-51 (2d Cir. 2021)); See also Moore v. City of New York, No. 22 Civ. 10957 (LGS), 2024 WL 3361193, at *5 (S.D.N.Y. July 10, 2024) (denying a motion to dismiss where tight handcuffs left marks and injuries on plaintiff's wrists).

The proposed SAC describes the pain the handcuffs caused, which was exacerbated by her pre-existing injuries that she told the officers about. Ex. B at ¶¶ 163-187. Plaintiff also adds new allegations to the proposed SAC, including that her left hand was swollen, turned red, and had "deep indentations" where the handcuffs dug into her wrists. Id. at ¶¶ 171, 184. At this stage, because leave to amend should be granted "where justice so requires," and Plaintiff added allegations of a policy under Monell and allegations of injury, the motion for leave to amend to reassert the excessive force claim based on tight handcuffing is **GRANTED**.

### 3. Defamation

Plaintiff seeks to reassert the defamation claim on the basis that the psychological evaluation was unnecessary. Ex. B at ¶ 195. Judge Schofield dismissed the federal and state law defamation claims because the suicide report made by the 911 caller was neither false nor derogatory. Dkt. No. 41 at 18.

To sustain a defamation claim under New York law, a complaint must plead the following elements: (a) a false statement that tends to expose a person to public contempt, hatred, ridicule, aversion, or disgrace, (b) published without privilege or authorization to a third party, (c) amounting to fault as judged by, at a minimum, a negligence standard, and (d) either causing special harm or constituting defamation

15

per se. Long Island Thoracic Surgery, P.C. v. Bldg. Serv. 32BJ Health Fund, 188 N.Y.S.3d 570, 572 (2d Dep't 2023).

Because the new evidence and proposed SAC does not sufficiently allege any of the elements required to plead defamation, the motion to reassert the defamation claims is **DENIED**.

### 4. Intentional and Negligent Infliction of Emotional Distress

Judge Schofield dismissed the intentional infliction of emotional distress claim because "the Amended Complaint does not allege the requisite 'extreme and outrageous conduct.' Chanko v. Am. Broad. Cos., 49 N.E.3d 1171, 1178 (N.Y. 2016)." Dkt. No. 41 at 19. In dismissing the claim, the Court highlighted that "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. (internal quotations and citations omitted).

The proposed SAC alleges that the officers "chose to subject Plaintiff to intentional and unnecessary abuse, risking harm, and causing excruciating pain…" Ex. B at ¶ 180. While it is clear from the BWV that Plaintiff is in pain, the EMS personnel took steps to alleviate the pain by transferring Plaintiff from the chair to a stretcher and altering the handcuffs for Plaintiff's comfort. Coghlan BWV at 52:47-1:00:55. Though Plaintiff has adequately plead that she suffered pain and the BWV depicts her pain, the allegations in the proposed SAC "do not meet the high bar of

'extreme and outrageous conduct' required for intentional infliction of emotional distress." Dkt. No. 41 at 19.

New York law is clear that intentional conduct cannot serve as the basis for a negligence claim. Mees v. Stibbe New York B.V., 146 N.Y.S.3d 481, 481-82 (1st Dep't 2021). The proposed SAC alleges the NYPD officers intentionally injured Plaintiff by handcuffing her and placing her in the chair but does not include any facts to support a claim of negligent infliction of emotional distress under either "(1) the 'bystander' theory; or (2) the 'direct duty theory,'" as required. Mortise v. U.S., 102 F.3d 693, 696 (2d Cir. 1996).

For the reasons stated above, Plaintiff's motion to reassert the intentional and negligent infliction of emotional distress claims is **DENIED**.

### 5. Retaliation

The retaliation claim suffers from the same deficiencies as the FAC and therefore cannot be reasserted. Judge Schofield found that the record "any causal link between Plaintiff's stated intent to sue and the CCHR report to the police was severed by Plaintiff's intervening suicide threat, particularly where CCHR's report of the treat was not untrue." Dkt. No. 41 at 20-21. The BWV depicts Plaintiff confirming to the NYPD officers that she sent the email suicide threat. Coghlan BWV at 8:05-9:39. Accordingly, Plaintiff's motion to replead the retaliation claim is **DENIED**.

### 6. Failure to Train and Negligent Supervision

The failure to train claim was dismissed because the FAC did not state a Section 1983 claim regarding either CCHR's refusal to file a complaint or the suicide evaluation.  Dkt. No. 41 at 21.

Absent an express policy, a plaintiff may allege an official policy actionable under Monell by pleading a municipality's failure to train its employees that amounts to "deliberate indifference to the rights of persons with whom the untrained employees come into contact." Hernandez v. United States, 939 F.3d 191, 206 (2d Cir. 2019).  "Deliberate indifference is a stringent standard of fault." Id. at 207.  It requires Plaintiff to plead that the municipality "has actual or constructive notice, generally from a pattern of similar constitutional violations by untrained employees, that its training program is deficient," such that the municipality's failure to train or supervise employees "was taken with deliberate indifference as to its known or obvious consequences." Id.

Plaintiff fails to plead sufficient facts for a failure to train claim.  She did not include factual assertions in the proposed SAC that demonstrate that the municipality has actual or constructive notice of a pattern of similar constitutional violations and the BWV, without the requisite factual assertions by Plaintiff, does not serve as a basis for the reassertion of the failure to train claim.

Additionally, the state law claim of negligent supervision still fails because Plaintiff did not include additional facts to show that CCHR or the City had actual or constructive knowledge of the "employee's propensity for the sort of behavior which

18

caused the injured party's harm." Moore Charitable Found. v. PJT Partners, Inc., 217 N.E.3d 8, 14 (N.Y. 2023).

### 7. 42 U.S.C. §§ 1981, 1985, 1986, 1988

Nothing in the BWV gives rise to facts sufficient to reassert claims under Section 1981, 1985, 1986, or 1988. Judge Schofield dismissed the Section 1981 claim because it cannot be brought against state actors. Dkt. No. 41 at 14.

The Section 1985 and 1986 claims were dismissed because Plaintiff failed to plead a conspiracy claim and the BWV footage does not provide any evidence to support conspiracy causes of action. Id.

Judge Schofield dismissed the Section 1988 claims because it "does not independently provide a federal cause of action." Id. at 21. Additional evidence provided by the BWV does not change that.

Accordingly, Plaintiff's motion for leave to amend the FAC to add claims under Sections 1981, 1985, 1986 and 1988 is **DENIED**.

### D. NYPD EMS Personnel

Judge Schofield previously granted Plaintiff's motion for reconsideration and read a claim of failure to accommodate under the ADA against the NYPD officers who transported Plaintiff into the FAC. Dkt. No. 58. Specifically, the Court found that based on the allegations that NYPD officers "shoved Plaintiff into an unstable portable chair and strapped her to it, which caused her back injuries to spasm," the FAC "alleges that Plaintiff is a qualified individual with a disability; that she suffered greater injury than others without disabilities who were subject to involuntary

19

evaluations; and that greater injury resulted from the conduct of officers who knew but consciously disregarded her disability." Id. at 4-5.

A claim under Title II of the ADA requires a plaintiff to establish that "(1) [s]he is a qualified individual with a disability; (2) the defendant is subject to one of the Acts; and that (3) [s]he was denied the opportunity to participate in or benefit from the defendant's services programs, or activities, or was otherwise discriminated against by the defendant because of [her] disability." McElwee v. County of Orange, 700 F.3d 635, 640 (2d Cir. 2012)).

Where a plaintiff "merely asserts that [her] disability was not adequately treated, not that [s]he was treated inadequately because of [her] disability," courts in this District have granted motions to dismiss. See Harrell v. New York State Dep't of Corr. And Cmty. Supervision, No. 15 Civ. 7065 (RA), 2019 WL 3821229, at *16 (S.D.N.Y. Aug. 14, 2019). Viewing the allegations in the proposed SAC and the BWV footage in the light most favorable to Plaintiff, this Court cannot reasonably infer that EMS personnel failed to provide a stretcher in lieu of a chair for transport "by reason of" Plaintiff's disability. Id. (citing 42 U.S.C. § 12132). The SAC characterizes the decision to transport Plaintiff in chair instead of a stretcher as "puzzling and inexcusable," but does not allege that the decision was made *because of* Plaintiff's disability. The BWV establishes that the EMS personnel offered the chair to accommodate Plaintiff because she appeared to be in pain and had trouble walking. Coghlan BWV at 49:52-50:05. Once Plaintiff was brought to the lobby, an EMS worker told her that they would transfer her to a stretcher and handcuff her to the

side bar instead.  Id. at 52:49-53:05.  Nothing in the footage gives rise to a reasonable inference that the decision to use the chair was made to discriminate against Plaintiff because of her disability.

Furthermore, the ADA does not support "a challenge to the adequacy of services provided, as opposed to a challenge alleging denial of services provided to non-disabled persons…" Maccharulo v. New York State Dep't of Corr. Servs., No. 08 Civ. 301 (LTS), 2010 WL 2899751, at *4 (S.D.N.Y. July 21, 2010); see also Greene v. City of New York, No. 21 Civ. 5762 (LAP), 773 F.Supp.3d 94, 110-111 (S.D.N.Y. Mar. 28, 2025) (dismissing an ADA claim where the claims attack the adequacy of services provided by EMTs).  Here, Plaintiff does not allege that she was denied transport by the EMS personnel but rather challenges the adequacy of the transport via chair instead of stretcher.  Ex. B at ¶¶ 158-187.

Additionally, Plaintiff does not include factual allegations in the proposed SAC to add EMS personnel as Defendants to the unlawful search or excessive force claims. See id. at 158-184.  Accordingly, because it would be futile, Plaintiff's motion for leave to add EMS personnel as Defendants in this case is **DENIED**.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for leave to amend the FAC is **GRANTED** as to the unlawful search and excessive force claims and **DENIED** as to all other claims.  The remaining claims are (1) a Section 1983 claim against the City of New York for racial discrimination; (2) a claim under the NYCHRL for racial discrimination, (3) a claim under the ADA against the NYPD officers regarding their

21

failure to accommodate Plaintiff's injuries when detaining her, (4) an excessive force claim against the NYPD officers who handcuffed Plaintiff, and (5) an unlawful search claim against Coghlan under Section 1983.

Accordingly, Plaintiff is to file a SAC that is consistent with this Court's ruling within **30 days** of this Order. The SAC is to include only those claims for which leave to amend has been granted, in addition to the claims Judge Schofield declined to dismiss.

SO ORDERED.

DATED:    New York, New York
          July 30, 2026

_____
JENNIFER E. WILLIS
United States Magistrate Judge