UNITED STATES DISTRIC COURT

SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| KELLY MACNEAL,<br>Plaintiff,<br><br>-against-<br><br>THE CITY OF NEW YORK;<br>POLICE OFFICER BRYAN HANSON;<br>POLICE OFFICER NICKOLAS ALAVANJA;<br>POLICE OFFICER DYLAN DARNAUD;<br>POLICE OFFICER BRENDAN MCGOVERN;<br>POLICE OFFICER NICK MICKOVIC; and<br>POLICE OFFICERCONNOR COGHLAN,<br><br>Defendant(s), : | X | 23-CV-05890 (LGS) (JW)<br><br>SECOND AMENDED COMPLAINT |

Plaintiff Kelly MacNeal, complaining of Defendants, alleges and says:

**PARTIES**

**1.** Plaintiff Kelly MacNeal is a citizen of the United States who resides in New York, New York. Plaintiff is Caucasian and has been classified as physically disabled by the Social Security Administration since April 29, 2015.

**2.** Defendant City of New York is a municipal corporation organized under the laws of the State of New York. The City operates the New York City Commission on Human Rights ("CCHR"), the New York

City Police Department ("NYPD"), and the Fire Department of the City of New York Bureau of Emergency Medical Services ("FDNY-EMS").

**3.** Defendant Bryan Hanson was, at all relevant times, an NYPD officer acting under color of state law. On May 6, 2022, Hanson participated in the decision to transport Plaintiff and spoke with Plaintiff's then-counsel concerning that transport.

**4.** Defendant Nickolas Alavanja was, at all relevant times, an NYPD officer acting under color of state law. Alavanja was present during Plaintiff's detention, seizure, and restraint on May 6, 2022.

**5.** Defendant Dylan Darnaud was, at all relevant times, an NYPD officer acting under color of state law. Darnaud was among the officers who grabbed Plaintiff in the hallway, participated in restraining her, and heard her statements concerning her disabilities and pain.

**6.** Defendant Brendan McGovern was, at all relevant times, an NYPD officer acting under color of state law. McGovern participated in grabbing Plaintiff, forcing her into a transport chair, and securing her in that chair while she was handcuffed.

**7.** Defendant Nick Mickovic was, at all relevant times, an NYPD officer acting under color of state law. Mickovic was present at Plaintiff's

apartment, participated in grabbing and handcuffing Plaintiff, and was present during her detention and transport.

**8.** Defendant Connor Coghlan was, at all relevant times, an NYPD officer acting under color of state law. Coghlan applied Plaintiff's handcuffs, assisted in placing Plaintiff in the transport chair, cuffed Plaintiff to a stretcher, and searched Plaintiff's tote bag inside the ambulance.

**JURISDICTION AND VENUE**

**9.** This Court has original jurisdiction over Plaintiff's claims arising under federal law pursuant to 28 U.S.C. § 1331.28 USCS § 1331.

**10.** This Court has jurisdiction over Plaintiff's civil-rights claims pursuant to 28 U.S.C. § 1343(a)(3) and (4).28 USCS § 1343.

**11.** This Court has supplemental jurisdiction over Plaintiff's claim under the New York City Human Rights Law because that claim forms part of the same case or controversy as Plaintiff's federal claims. 28 USCS § 1367.

**12.** Venue is proper in this District because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District. 28 USCS § 1391.

**FACTUAL ALLEGATIONS**

**13.** Plaintiff has a traumatic brain injury, back and neck injuries causing radiculopathy, a chronic wedge fracture in her thoracic spine that has resulted in lumbar scoliosis, and injuries affecting her arm and wrist. She experiences chronic pain and uses a cane or rollator to ambulate.

**14.** Plaintiff resides in an affordable, disability-accessible apartment in New York, New York, and receives Social Security Disability Insurance as her primary income.

**15.** In March 2022, Plaintiff sought CCHR's assistance in filing a complaint against her landlord. Her request included allegations that the landlord treated her differently because she was an affordable or subsidized tenant and failed to respond adequately to conditions affecting her disability.

**16.** On April 12, 2022, Plaintiff participated in a CCHR intake interview with Agency Attorney Jacqueline Rios. Plaintiff explained that she sought protection against discrimination based on disability and on her status as an affordable or subsidized tenant.

**17.** Plaintiff asked CCHR to pursue a source-of-income discrimination complaint based on the differential treatment she believed she received as an affordable-unit tenant.

**18.** During the intake process, Rios told Plaintiff that affordable-tenant or source-of-income protections were intended to protect minorities because most affordable tenants are minorities, and that CCHR would not file a complaint for Plaintiff on that basis because Plaintiff was not a racial minority.

**19.** Plaintiff explained that source-of-income protection under the New York City Human Rights Law was not limited by race. Rios nevertheless maintained that Plaintiff could not receive protection based on subsidized-tenant status because Plaintiff was Caucasian.

**20.** Plaintiff requested review by Rios's supervisor. On or about April 14, 2022, CCHR Deputy Commissioner Sapna Raj spoke with Plaintiff and reiterated that Plaintiff could not seek affordable-tenant discrimination protection because Plaintiff was not a minority.

**21.** CCHR did not file a complaint for Plaintiff against her landlord based on Plaintiff's subsidized-tenant or source-of-income status.

**22.** On May 6, 2022, after continued fumes in her apartment caused severe pain, Plaintiff sent communications documenting her

condition. CCHR reported Plaintiff to authorities as a possible suicide threat without first calling Plaintiff to clarify the meaning of her communication.

**23.** Later that day, Defendants Hanson, Alavanja, Darnaud, McGovern, Mickovic, and Coghlan, along with FDNY-EMS personnel, arrived at Plaintiff's apartment for a purported wellness check.

**24.** Plaintiff opened her apartment door while keeping the latch engaged and repeatedly told the officers and EMS personnel that she was not suicidal, did not pose a threat to herself or others, and had used hyperbolic language to describe the pain she was experiencing.

**25.** Plaintiff told the officers and EMS personnel that she was disabled, had an injured arm and back, had spinal fractures, and was experiencing extreme pain. Plaintiff used a walking cane in their presence.

**26.** Plaintiff agreed under protest to submit to transport after Officer Hanson spoke with her then-counsel and mischaracterized Plaintiff's statements as expressing a wish to kill herself.

**27.** When Plaintiff stepped outside her apartment, officers took Plaintiff's cane from her hand. Officers Coghlan, Mickovic,

McGovern, and Darnaud grabbed Plaintiff and moved her into the hallway while Plaintiff stated that she was disabled and in pain.

**28.** Plaintiff was not suspected of any crime, was not armed, was not fleeing, and did not pose an apparent physical threat to the officers or others.

**29.** Officer Coghlan applied handcuffs to Plaintiff. The cuffs were positioned sideways and tightly enough to cause pain, swelling, redness, and visible indentations on Plaintiff's wrists. Plaintiff repeatedly stated that the handcuffs hurt, that she was disabled, and that she had an injured arm and back.

**30.** Officers and EMS personnel forced Plaintiff into a folding portable transport chair while she remained handcuffed. Plaintiff stated that the chair would not safely support her injured back and repeatedly requested that her restraints be adjusted or removed.

**31.** Plaintiff was transported from her apartment to the ambulance in the chair. EMS personnel repeatedly tilted the chair backward, causing Plaintiff's body weight to press against the handcuffs and her injured back. Plaintiff repeatedly cried out in pain and stated that she had a broken back and wrist injury.

**32.** Plaintiff was taken to the ambulance in the transport chair despite the availability of a standard stretcher. Plaintiff was transferred to the stretcher only after arriving at the ambulance.

**33.** During the transfer to the stretcher, Officer Coghlan uncuffed Plaintiff's right hand but pulled on the cuff attached to Plaintiff's left wrist, hyper-rotating Plaintiff's injured arm while attaching her to the stretcher. Plaintiff cried out in pain.

**34.** Inside the ambulance, Officer Coghlan obtained Plaintiff's tote bag, opened it, removed Plaintiff's wallet, removed Plaintiff's State identification card and benefit card, and photographed those cards.

**35.** Plaintiff did not consent to Coghlan's search of her bag, wallet, or personal identification and benefit cards. Plaintiff was not under arrest for a criminal offense, and Plaintiff first learned of the search when she later viewed body-worn-camera footage produced by the City.

**36.** Plaintiff experienced pain, swelling, wrist indentations, back spasms, aggravation of existing injuries, emotional distress, and trauma as a result of the handcuffing and transport.

**COUNT I — 42 U.S.C. § 1983: RACE DISCRIMINATION AND DENIAL OF EQUAL PROTECTION**

**37.** Plaintiff repeats and realleges paragraphs 1 through 36 as though fully set forth herein.

**38.** Section 1983 provides a cause of action against a person who, under color of state law, subjects a person to the deprivation of rights secured by the Constitution and laws of the United States. 42 USCS § 1983.

**39.** Plaintiff is Caucasian and sought CCHR's assistance in pursuing a complaint alleging discrimination based on her subsidized-tenant or source-of-income status.

**40.** CCHR officials, acting in the course of their official duties, told Plaintiff that source-of-income protection was intended only for minorities and refused to file a source-of-income complaint for Plaintiff because Plaintiff is Caucasian.

**41.** The City, through CCHR and its officials, intentionally treated Plaintiff differently in the administration of municipal civil-rights services because of Plaintiff's race.

**42.** The City's conduct deprived Plaintiff of equal protection of the laws and caused Plaintiff injury.

## COUNT II — NEW YORK CITY HUMAN RIGHTS LAW: RACE DISCRIMINATION

**43.** Plaintiff repeats and realleges paragraphs 1 through 42 as though fully set forth herein.

**44.** The New York City Human Rights Law prohibits discrimination based on race in the administration of municipal programs and services.

**45.** CCHR, acting as an agency of the City, informed Plaintiff that source-of-income protection was available only to racial minorities and denied Plaintiff's request to file a complaint based on her subsidized-tenant status because Plaintiff is Caucasian.

**46.** By treating Plaintiff less favorably because of her race, the City violated the New York City Human Rights Law.

**47.** Plaintiff suffered emotional distress and was denied municipal civil-rights enforcement services as a direct result of the City's conduct.

## COUNT III — TITLE II OF THE AMERICANS WITH DISABILITIES ACT: FAILURE TO ACCOMMODATE

**48.** Plaintiff repeats and realleges paragraphs 1 through 47 as though fully set forth herein.

**49.** Plaintiff is a qualified individual with disabilities, including a traumatic brain injury, spinal injuries, scoliosis, radiculopathy, and injuries affecting her arm and wrist.

**50.** The City is a public entity that provides police and emergency-medical-response services through the NYPD and FDNY-EMS.

**51.** City employees knew of Plaintiff's disabilities and injuries because Plaintiff repeatedly informed them that she was disabled, had a broken back, had spinal fractures, and was in severe pain.

**52.** Plaintiff requested reasonable modifications during her transport, including adjustment of the handcuffs, being allowed to walk on her own instead of using the portable chair, and avoidance of a transport method that caused pressure on her injured wrists and back.

**53.** City employees refused those requested modifications and transported Plaintiff while handcuffed in a manner that aggravated her injuries, despite the availability of a stretcher.

**54.** Plaintiff suffered greater injury because of her disabilities than a person without her disabilities would have suffered from the same transport method.

**55.** The City, through NYPD officers and FDNY-EMS personnel, failed to reasonably accommodate Plaintiff's known disabilities during her transport from her apartment to the ambulance.

**COUNT IV — 42 U.S.C. § 1983: EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AMENDMENT**

**56.** Plaintiff repeats and realleges paragraphs 1 through 55 as though fully set forth herein.

**57.** Defendants Hanson, Alavanja, Darnaud, McGovern, Mickovic, and Coghlan acted under color of state law.

**58.** Plaintiff was seized when NYPD officers took her cane, grabbed her, restrained her, and handcuffed her for transport from her apartment.

**59.** Plaintiff was not suspected of a crime, was not fleeing, was not armed, was not resisting arrest, and did not pose an immediate threat to the officers or others.

**60.** Officers Darnaud, McGovern, Mickovic, and Coghlan grabbed Plaintiff, restrained her despite known injuries, and participated in or failed to stop the application of force while Plaintiff repeatedly stated that she was disabled and in pain.

**61.** Officer Coghlan applied the handcuffs tightly and sideways, assisted in placing Plaintiff into the transport chair, and hyper-rotated Plaintiff's injured arm during the transfer to the ambulance stretcher.

**62.** Officer Hanson participated in the detention decision and was present during Plaintiff's seizure and restraint. Officer Alavanja was present during the seizure and restraint and did not stop the excessive handcuffing or handling of Plaintiff.

**63.** The force used against Plaintiff, including taking her cane, violently grabbing her, twisting her injured arm, applying excessively tight and improperly positioned handcuffs, and refusing to adjust the restraints despite Plaintiff's complaints of pain, was objectively unreasonable.

**64.** The City is liable because the officers stated that their restraint practices were required by policy and because the City's policies, customs, practices, and failures in training and supervision caused the deprivation of Plaintiff's constitutional rights.

## COUNT V — 42 U.S.C. § 1983: UNLAWFUL SEARCH IN VIOLATION OF THE FOURTH AMENDMENT

**65.** Plaintiff repeats and realleges paragraphs 1 through 64 as though fully set forth herein.

**66.** Officer Coghlan acted under color of state law when he obtained Plaintiff's tote bag in the ambulance, opened it, searched its contents, removed Plaintiff's wallet and identification cards, and photographed Plaintiff's identification and benefit cards.

**67.** Plaintiff did not consent to the search, no warrant authorized the search, and Plaintiff was being transported for a wellness or psychiatric evaluation rather than under arrest for a criminal offense.

**68.** Officer Coghlan's search of Plaintiff's closed tote bag, wallet, and personal documents was unreasonable and violated Plaintiff's rights under the Fourth Amendment.

**69.** Plaintiff suffered injury to her privacy and possessory interests, together with emotional harm, as a direct result of Officer Coghlan's unlawful search.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and grant the following relief:

**A.** Compensatory damages against the City of New York on Counts I, II, III, and IV in an amount to be determined at trial;

**B.** Compensatory damages against Defendants Hanson, Alavanja, Darnaud, McGovern, Mickovic, and Coghlan, jointly and severally, on Count IV in an amount to be determined at trial;

**C.** Compensatory damages against Defendant Coghlan on Count V in an amount to be determined at trial;

**D.** Punitive damages against the individual NYPD Defendants on Count IV and against Defendant Coghlan on Count V;

**E.** Costs and disbursements recoverable by law;

**F.** Prejudgment and post-judgment interest to the extent permitted by law; and

**G.** Such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: New York, New York
September 26, 2026

Respectfully submitted,



Kelly MacNeal
Plaintiff Pro Se
507 West 28th St,Apt 26D
New York, NY 10001
Tel: (212) 581-3223

Cc: **VIA ECF**
Caroline DiCostanzo
Attorney for Defendant City of New York
*Assistant Corporation Counsel*
New York City Law Department
100 Church Street
New York, NY 10007
(212) 356-2662
cdicosta@law.nyc.gov

Bianca C. Isaias
Attorney for Defendant City of New York
*Assistant Corporation Counsel*
New York City Law Department
100 Church Street, 20th Floor
New York, NY 10007
(212) 356-4050
*bisaias@law.nyc.gov*

Doris F. Bernhardt
Attorney for Defendant City of New York
*Assistant Corporation Counsel*
100 Church Street
New York, NY 10007
(212) 356-2296